[Crim. No. 10226. First Dist., Div. Four. Jan. 26, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUISE DROLET et al., Defendants and Appellants.

## COUNSEL

Manzella, Flenniken & Tanner, William Flenniken, Jr., Wells & Chesney and Arthur Wells, Jr., for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BRAY, J.**[*]—Appeal by defendants from judgment of conviction after jury verdict, of certain violations of the Penal Code.

### Questions Presented

1. Penal Code section 288a is not unconstitutional when applied to consenting adults.

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

2. Oral copulation performed on the theatrical stage is not protected by the First Amendment.

3. The evidence is insufficient to convict appellant Downton of aiding and abetting or either appellant of conspiracy.

## Record

Appellant Downton was found guilty of violation of Penal Code section 288a (aiding and abetting an act of oral copulation) and of Penal Code section 182 (conspiracy to violate the provisions of § 288a). Appellant Drolet was found guilty of violating section 288a (oral copulation) and of section 182 (conspiracy to violate provisions of § 288a). Motions for new trial and probation were denied. Appellant Downton was sentenced to state prison for the terms prescribed by law, sentences to run concurrently. Appellant Drolet was sentenced to state prison, the execution of the sentence was suspended, and appellant was placed on three years' probation on condition she serve nine months in the county jail, sentences to run concurrently.

## Evidence

It is unnecessary to give the disgusting and lurid details of the public performance produced at the Outer Limits Club. Suffice it to say that after a skit called "Adam and Eve," narrated by a fully clothed female in which she pointed out in gutter vernacular the intimate portions of the male and female bodies illustrated by appellant Drolet and a male performer, one Wells, both in the nude, appellant Drolet proceeded to orally copulate the penis of the male and in a following skit proceeded to demonstrate the use of a dildo. The evidence concerning this performance is uncontradicted.

### 1. Penal Code section 288a applies to consenting adults.

That section provides, in pertinent part, "Any persons participating in an act of copulating the mouth of one person with the sexual organ of another is punishable. . . ."

Appellants contend that this statute is unconstitutional when applied to consenting adults. They cite no authority for this contention except a decision of the Los Angeles County Superior Court so holding, People v. Schwartz, Superior Court No. A-282165, which held section 288a unconstitutional if applied to consenting adults. That case cites no authority dealing with the specific act but bases its ruling on two federal cases. (1) *Eisen-*

*stadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029], held unconstitutional a law banning the distribution of contraceptive devices to unmarried persons. (2) *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678], held that a statute making it a crime for any person to use any drug, medicinal article or instrument for the purpose of preventing conception was unconstitutional as applied to married persons.

Neither of these cases supports the decision in *Schwartz, supra.* The *Eisenstadt* ruling was that the law in question violated the equal protection clause of the Fourteenth Amendment as distinguishing between married and unmarried persons.

The *Griswold* ruling was that the statute in question was an unconstitutional invasion of the right of privacy of married persons.

Neither the equal protection clause nor the right of privacy is involved in this proceeding.

In *People* v. *Roberts* (1967) 256 Cal.App.2d 488 [64 Cal.Rptr. 70], the appellant made practically the same contention as does appellant here: ". . . defendant contends that Penal Code section 288a in an unconstitutional legislative invasion of the right of privacy guaranteed by, and violates the ban on cruel and unusual punishment of, the federal and state Constitutions. This attack is founded generally on recent treatises concerning human sexual behavior. The heart of defendant's argument, taken from his brief, is: '. . . no modern authority of the last 20 years, judicial, medical, or sociological, will support the proposition that the prohibition of the act of copulating the mouth on the sexual organ of another accomplishes any compelling legislative purpose.'

"A similar attack was made on the statute in *People* v. *Ragsdale* (1960) 177 Cal.App.2d 676 [2 Cal.Rptr. 640]. Rejecting the contention that Penal Code section 288a was unconstitutional, the court stated (p. 679): '. . . the making of unnatural sexual relations a crime is embedded in the history of the common law and finds its sanction in the broader basis of the settled mores of our western civilization. There is a considerable body of opinion that as between willing adults the question should be left to moral sanctions alone and eliminated from the criminal law. That however presents a legislative question and not one for the courts.' " (256 Cal.App.2d at p. 495.)

■ In the exercise of its police power, each state has the right to enact laws to promote public health, safety, morals and welfare. (*Lochner* v. *New York* (1905) 198 U.S. 45, 53 [49 L.Ed. 937, 940, 25 S.Ct. 539]; *In*

*re Weisberg* (1932) 215 Cal. 624, 627-628 [12 P.2d 446].) ■ Penal statutes proscribing illicit sexual contacts constitute a legitimate and proper exercise of that power. (See concurring opinions of Mr. Justice Goldberg and Mr. Justice White *Griswold* v. *Connecticut, supra,* 381 U.S. 479, 498-499, 505 [14 L.Ed.2d 510, 523-524, 527].) The exercise of this power is a legitimate legislative function, and the courts do not sit as a super-legislative body to determine the desirability or propriety of statutes enacted by the Legislature. (*Griswold* v. *Connecticut, supra,* at p. 482 [14 L.Ed.2d at p. 513].)

While Justice Marshall in his dissent in *California* v. *LaRue* (1972) 409 U.S. 109, 132, footnote 10 [34 L.Ed.2d 342, 360, 93 S.Ct. 390] indicated doubt as to whether the state could constitutionally assert an interest in regulating any sexual act between consenting adults, none of the other Supreme Court Justices indicated that he shared this doubt, and moreover, Justice Marshall seemed to indicate that had the state charged the specific crimes committed (oral copulation, public masturbation, etc.) he might have viewed the case differently, for after stating (p. 132 [34 L.Ed.2d p. 360]) that the state can control murder, drug abuse, rape and prostitution by punishing those acts directly, he said "This case might be different if the State asserted a *primary interest in stopping the very acts* performed by these dancers and actors." (Italics added.) In the instant case that is what was done, stopping the performance of oral copulation by prohibiting the unlawful act.

*Eisenstadt* v. *Baird, supra,* 405 U.S. 438, has no application here. It held that a statute prohibiting the distribution of contraceptives to unmarried persons, while there was no prohibition against their being distributed to married persons, violated the equal protection clause of the United States Constitution.

2. *First Amendment*

■ Erroneously relying on *In re Giannini* (1968) 69 Cal.2d 563 [72 Cal.Rptr. 655, 446 P.2d 535], cert. den. 395 U.S. 910 [23 L.Ed.2d 223, 89 S.Ct. 1743], *Barrows* v. *Municipal Court* (1970) 1 Cal.3d 821 [83 Cal.Rptr. 819, 464 P.2d 483], and *Castro* v. *Superior Court* (1970) 9 Cal. App.3d 675 [88 Cal.Rptr. 500], appellants make the fantastic contention that oral copulation is merely a method of expression and is a form of speech protected by the First Amendment. Such contention would also apply to such crimes as sodomy, incest, rape, and crimes against nature, if committed during a stage performance. Appellants are not charged with "a constitutionally protected demonstration" but with a criminal act.

In *People* ex rel. *Hicks* v. *Sarong Gals* (1972) 27 Cal.App.3d 46 [103 Cal.Rptr. 414] (hg. den. by Cal. Supreme Court, Nov. 14, 1972), where the court held that the Red Light Abatement Law applied to a place used for the purpose of lewdness, such as public performances graphically depicting sexual intercourse, masturbation, fellation, cunnilingus, buggery and other lewd acts, the court said: "While our Supreme Court has held that amusement and entertainment as well as the expression of ideas are encompassed within the right of freedom of speech (*In re Giannini, supra,* 69 Cal.2d 563, 569; *Weaver* v. *Jordan,* 64 Cal.2d 235, 242 [49 Cal.Rptr. 537, 411 P.2d 289]), entertaintment value per se does not give an activity redeeming social importance. Presumably, the Romans of the first century derived entertainment from witnessing Christians being devoured by lions. Given the right audience, the spectacle of a man committing an act of sodomy on another man would provide entertainment value. However, neither this spectacle nor the activities described in the instant case are invested with constitutionally protected values merely because they entertain viewers. However chaotic the law may be in this field, no court has as yet adopted such an extreme result." (27 Cal.App.3d at p. 51.)

Applicable to the acts of the so-called "entertainers," Wells and appellant Drolet, is the following: "The acts of the 'entertainers' or 'dancers' in the instant case were purely and simply obscene acts performed for the purpose of inciting the sexual desires and imaginations of a group of randy . . . patrons." (*People* ex rel. *Hicks* v. *Sarong Gals, supra,* 27 Cal.App.3d 46, 51.)

Appellants contend that oral copulation between adults is a type of behavior that should be judged by obscenity standards when performed on a stage. He cites no authority for the proposition that oral copulation is an act of symbolic speech. The contention that it is, is absurd.

*In re Giannini, supra,* 69 Cal.2d 563, was a prosecution of a "topless" dancer and a night club manager for lewd exposure and lewd or dissolute conduct. It held, in effect, that the performance of a dance prima facie enjoys protection under the First Amendment but "loses such protection upon a showing of its obscenity" (p. 567) and that the burden is on the prosecution to prove obscenity according to contemporary community standards in a charge of lewd and obscene conduct, under Penal Code sections 314, subdivision 1, and 647, subdivision (a). It did not even intimate, as suggested by appellants, that oral copulation is a form of First Amendment expression. *Giannini* is not applicable here where the charge

is not lewd and obscene conduct but that of committing a specific crime which does not require proof of its obscene character.

*Barrows* v. *Municipal Court, supra,* 1 Cal.3d 821, held that Penal Code section 647, subdivision (a), making any person guilty of a misdemeanor who solicits to engage or engages in lewd or dissolute conduct in a public place, and Penal Code section 311.6, making any person guilty of a misdemeanor who sings or speaks any obscene song, ballad or other words, were not applicable to theatrical performances. Of significance, in view of the fact that oral copulation is an act which is independently prohibited by law, is the court's statement (p. 830), "Our holding here does not suggest that acts which are independently prohibited by law may be consummated without sanction on the stage merely because they occur during the course of a theatrical play."

*Castro* v. *Superior Court, supra,* 9 Cal.App.3d 675, also is not in point. It deals with charges arising out of high school disturbances. While it deals with the exercise of fundamental First Amendment rights, its ruling has no relevancy to the facts of the instant case.

It is difficult, if not impossible, to understand what public oral copulation is supposed to express as being a part of freedom of speech as guaranteed by the First Amendment, nor how public performance of it takes it out of the category of a crime. As Justice Marshall said in his dissent in *LaRue* (p. 130 [34 L.Ed.2d at p. 359]), "I do not mean to suggest that anything which occurs upon a stage is automatically immune from state regulation. No one seriously contends, for example, that an actual murder may be legally committed so long as it is called for in the script, or that an actor may inject real heroin into his veins while evading the drug laws which apply to everyone else."

Mr. Justice Rehnquist in the majority opinion in *LaRue* (p. 117 [34 L.Ed.2d at p. 351]), stated "But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end which the State has declared to be illegal when such expression consists, in part, of 'conduct' or 'action,' [citations]." In *United States* v. *O'Brien* (1968) 391 U.S. 367, 376 [20 L.Ed.2d 672, 679, 88 S.Ct. 1673], the court suggested that the extent to which "conduct" was protected by the First Amendment depended on the presence of a "communicative element" and stated, "We cannot accept the view that an apparently limitless variety of conduct can be labeled

'speech' whenever the person engaging in the conduct intends thereby to express an idea." Just what idea public oral copulation is supposed to express other than a desire to appeal to the prurient has not been suggested by appellants.

In *Barrows* v. *Municipal Court, supra,* 1 Cal.3d 821, two actors were charged with violations of Penal Code section 647, subdivision (a), (lewd or dissolute conduct) and former section 311.6 (speaking or singing any obscene songs or words) for conduct occurring during the performance of a play entitled "The Beard." The producer and director of the play were charged with aiding and abetting the commission of the violations. The charged violation of section 647, subdivision (a), assertedly consisted of *simulated* acts of oral copulation.

The court reasoned that section 647 was not intended "to apply to activities, such as theatrical performances, which are prima facie within the ambit of First Amendment protection." (1 Cal.3d at p. 826.) It based this determination in large degree upon the requirement of section 290 that persons convicted under section 647, subdivision (a), must register as sex offenders, stating that "It would be irrational to impose upon an actor in a theatrical performance or its director a lifetime requirement of registration as a sexual offender because he may have performed or aided in the performance of an act, perhaps an obscene gesture, in a play." (*Id.,* at pp. 826-827.) There is a great deal of difference between simulating an act such as oral copulation and actually performing it. The Legislature's reluctance to require an actor to register as a sex offender for a simulated copulation would not apply to an actor actually performing it. The decision in *Barrows* must have had this in mind for it states, "Our holding here does not suggest that acts which are independently prohibited by law may be consummated without sanction on the stage merely because they occur during the course of a theatrical play. Dramatic license would not supply indulgence for the actual murder of the villain, the rape of the heroine, or the maiming of the hero." (*Id.* at p. 830.) Nor does it supply indulgence for the violation of section 288a.

The court in *Barrows* was careful to point out that the application of its decision was limited, for it stated: "We need not point out that the Legislature may prohibit the performance of an obscene play provided that constitutional standards are met in defining obscenity. (See *In re Giannini, supra,* 69 Cal.2d 563.) We hold here only that the consequences of applying section 647, subdivision (a), to acts performed in a play, the language of section 311.6 when read in the light of the definition of obscenity, and the legislative history of both sections, all indicate that the

Legislature did not intend those statutes to apply to theatrical perform-ances." (1 Cal.3d at p. 831.)

The United States Supreme Court has frequently recognized the dis-tinction between conduct which may be regulated by the state and ex-pression which may not be restricted except upon proof of obscenity (*Roth* v. *United States* (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304]) or a clear and present danger to a legitimate government (*Schenck* v. *United States* (1919) 249 U.S. 47 [63 L.Ed. 470, 39 S.Ct. 247]).

In *United States* v. *O'Brien, supra,* 391 U.S. 367, in which a draft card destruction conviction was upheld against the contention that the act of burning the card was protected symbolic speech guaranteed by the First Amendment to the United States Constitution as a form of "communication of ideas by conduct," the court said (p. 376 [20 L.Ed.2d pp. 679-680]): "We cannot accept the view that an apparently limitless variety of con-duct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in [the defendant's] conduct is suffi-cient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify inci-dental limitations on First Amendment freedoms."

### 3. *Aiding and abetting and conspiracy.*

█ Appellant Downton claimed that he did not know that appellant Drolet and Wells were going to indulge in oral copulation, that he told them to only simulate sex acts, and that there is no evidence to support his conviction of aiding and abetting the oral copulation.

The Supreme Court in *People* v. *Durham* (1969) 70 Cal.2d 171 [74 Cal.Rptr. 262, 449 P.2d 198] (cert. den. 395 U.S. 968 [23 L.Ed.2d 755, 89 S.Ct. 2116]), quoting from *People* v. *Villa* (1957) 156 Cal.App.2d 128, 133-134 [318 P.2d 828], noted that "[t]o be an abettor, the accused must have instigated or advised the commission of the crime or been present for the purpose of assisting in its commission." (Italics omitted.) Although the abettor "must share the criminal intent with which the crime was committed," he need not have previously entered into the con-spiracy to commit it. Finally, an aider and abettor is not only guilty of a crime which he knows his confederates are contemplating committing, "but he is also liable for the natural and reasonable or probable consequences

of any act that he knowingly aided or encouraged. Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury." (70 Cal.2d at p. 181; italics omitted.)

It is admitted that Downton advised the performers to simulate the act of copulation. Simulating it would not be a violation of Penal Code section 288a. Of course, the jury did not have to believe either of the defendants. But merely disbelieving them would not be evidence that Downton aided and abetted in the act which Drolet and Wells performed. There is no direct evidence that would tie him into aiding and abetting, and at best, there is only a suspicion that he might have done so.

Joan Deliz testified that she was employed by Downton at his New Follies Theater. He directed the "Adam and Eve" scenes, the dildo demonstration and the sex clinic in which she participated. The show lasted there about a month, as the show was not doing enough business. The show was later moved to the club "The Outer Limits." Downton provided the poems that were read, the script, the dildoes, the mattresses and other items used during the performances, and paid the performers. On June 24, Police Inspector Malone attended the Outer Limits Club. As he approached the club he saw Downton come out and get into his automobile. Seeing the officer, Downton parked his car and came over to Malone. Downton advised the officer that he was using the same script at the Outer Limits that he had written and directed at the Follies with a few minor exceptions. Downton accompanied the officer into the club and apparently remained with him all the time he was there. No act of oral copulation was performed during the performance.

A few nights later other officers watched the performance and it was then the actual act of copulation occurred. There is no contention that Downton was present.

There were no formal rehearsals of the play at the Outer Limits. The only directions consisted of "discussions" between Downton and the performers in the dressing room. When these discussions occurred does not appear.

The conviction of Downton as an aider and abettor and conspirator is based solely on the facts that he was the employer of the actors and the producer of the show and the suspicion that as the show had gone broke at the Follies Theatre he arranged for the actual act of copulation to provide a new act. This is not enough to convict him of the crime of aiding and abetting nor of conspiracy.

■ "Although a conspiracy may be proved by circumstantial evidence, there must be some evidence from which the unlawful agreement can be inferred before criminal liability may be imposed on the basis of conspiracy." (*Lavine* v. *Superior Court* (1965) 238 Cal.App.2d 540, 543 [48 Cal.Rptr. 8].) There must be substantial evidence to establish all the essential elements of the conspiracy. (*People* v. *Lynam* (1968) 261 Cal. App.2d 490 [68 Cal.Rptr. 202].) Mere association alone cannot furnish the basis for a conspiracy. (*Simmonds* v. *Superior Court* (1966) 245 Cal. App.2d 704, 708 [54 Cal.Rptr. 195].)

■ There is no substantial evidence to prove that appellant Downton aided or abetted in the performing of the 288a act, nor that the two appellants conspired together to have the act performed.

■ "There can be no question but that there must be a degree of dependent criminality between co-conspirators to violate a criminal statute in order for a conviction to stand. In other words, the guilt of both must occur in order to establish the guilt of either." (*People* v. *James* (1961) 189 Cal.App.2d 14, 15 [10 Cal.Rptr. 809, 91 A.L.R.2d 697].)

In view of our ruling herein, it becomes unnecessary to consider the other contentions of appellants.

The judgment of conviction of appellant Downton of violation of Penal Code section 288a as charged in count one, and of appellants Downton and Drolet of violation of section 182, is reversed. The judgment of conviction of appellant Drolet of violation of Penal Code section 288a as charged in count one, is affirmed.

Devine, P. J., and Rattigan, J., concurred.