[Crim. No. 31129. Second Dist., Div. Four. Apr. 17, 1978.]

In re DAVID K., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
DAVID K., Defendant and Appellant.

## COUNSEL

Alan A. Katz for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Frederick R. Millar, Jr., John R. Gorey and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—On December 14, 1976, in the Juvenile Court of Sutter County, a petition was filed alleging, in four counts, that

the minor, David K., had committed several criminal offenses on December 12, 1976. On December 28, 1976, the minor admitted the allegations of count V of an amended petition which alleged the violation on the same date of an attempted robbery pursuant to Penal Code sections 664 and 211. Counts I through IV were dismissed. The court, having determined that the minor was a resident of the County of Los Angeles, ordered the matter transferred to the Juvenile Court of Los Angeles County for further proceedings.

On January 10, 1977, by virtue of an amended petition filed in the Juvenile Court for the County of San Francisco, David was charged with having committed three offenses. In count I he was charged with committing, on December 12, 1976, the robbery of Edward Langley with the use of a knife in violation of Penal Code section 211a. In count II David was charged with a violation of section 10851 of the Vehicle Code on the same date by taking Langley's automobile. In count III he was charged with receiving stolen property on the same date, the property being that belonging to Mrs. Edward Langley, in violation of Penal Code section 496, subdivision 1. At an adjudicatory hearing held on January 18, 1977, the court sustained the petition with respect to count I and dismissed counts II and III. On January 28, 1977, the San Francisco Juvenile Court declared the minor to be a ward of the juvenile court and transferred the matter to the Los Angeles County Juvenile Court for further proceedings.

On February 18, 1977, the Los Angeles County Juvenile Court conducted a disposition hearing and found that the attempted robbery offense committed by the minor in Sutter County was of the first degree, a felony, and made a similar finding with respect to the San Francisco offense. The minor was declared a ward of the juvenile court under section 602 of the Welfare and Institutions Code and committed to the California Youth Authority. David appeals from the commitment to the California Youth Authority and also from the adjudication findings and judgment made by the San Francisco Juvenile Court.

Appellant David raises three contentions on this appeal. One contention is that the evidence in the San Francisco case was insufficient to establish that he committed the offense of robbery as an aider and abettor. The second contention is that it was an abuse of discretion for the juvenile court to commit him to the California Youth Authority. The third contention is that his constitutional rights were violated in the Sutter County Juvenile Court proceedings.

I

*The Evidence Is Insufficient to Sustain the*
*Finding That the Minor Committed the*
*San Francisco Robbery as an Aider and Abettor*

There is no dispute that on December 12, 1976, Edward Langley was robbed by a minor, George G., who used a switchblade knife and took from Langley the automobile in which the latter was then seated, together with money from his person. Langley testified at the San Francisco adjudication hearing that, on the date in question, he was seated behind the driver's wheel of his automobile in a San Francisco residential section, waiting for his wife to return from a residence nearby. According to Langley, he initially saw three minors in his rear view mirror and that two approached him on the driver's side of his automobile and one approached on the passenger's side. The only one of the three persons that Langley was able to identify at the hearing was George G., who put a knife near his neck and forced him to surrender his money and get out of the automobile. Langley testified that after he left the automobile he saw the heads of two other individuals in his automobile when George G. got in Langley's automobile and drove away.

The robbery of Langley took place shortly before noon. Approximately three hours later a police officer observed in Yuba City the automobile which had been taken from Langley with the minor, Salvador A., driving, George G. seated in the right front passenger's side and the minor before us, David K., seated in the back seat of the automobile. In the back seat of the stolen automobile, the officer observed a wallet on the seat between David's legs, a purse on the floorboard of the back seat, and a pair of binoculars on the back seat next to David. David had no money on his person. A switchblade knife was found underneath the side of the passenger's seat in the front where George G. was seated. Langley identified these items in his testimony. He stated that the wallet, purse and binoculars belonged to Mrs. Langley and were in the automobile when it was taken by the minor he identified as George G.

In his testimony at the San Francisco hearing, Langley admitted that, shortly after the robbery, he told a police officer that all three of the individuals whom he saw at the time of the robbery were of Latin descent and that all three of the individuals were 25 to 26 years of age. The record indicates that George and Salvador are of Latin descent but

that the minor David is a Caucasian. The record also establishes that the ages of the three minors are as follows: Salvador 16, George 15 and David 17.

Since Langley testified that it was George who pulled the switchblade knife and took Langley's money and the automobile with its contents, the criminal liability of David, the minor on this appeal, must rest upon the principle that he was an aider and abettor of George.

■ The legal principles that constitute the rules relating to aiding and abetting in the commission of a crime are well established. In *People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198], the court, citing from *People* v. *Villa* (1957) 156 Cal.App.2d 128 [318 P.2d 828], set forth the guiding principles in the following language: " 'To be an abettor the accused must have *instigated or advised* the commission of the crime *or been present for the purpose of assisting in its commission.* He must share the criminal intent with which the crime was committed. . . . [W]hile mere presence alone at the scene of the crime is not sufficient to make the accused a participant, and while he is not necessarily guilty if he does not attempt to prevent the crime through fear, such factors may be circumstances that can be considered by the jury with the other evidence in passing on his guilt or innocence. . . .' " (Italics in original.)

Other cases have set forth the rules regarding aiding and abetting in the commission of a crime in language similar to that found in *Durham.* In *People* v. *Butts* (1965) 236 Cal.App.2d 817, 836 [46 Cal.Rptr. 362], the court held that an accused aids and abets another in the commission of a crime if "the accused in any way, directly or indirectly, aided the perpetrator or advised and encouraged commission of the offense with knowledge of the latter's wrongful purpose." And in *Pinell* v. *Superior Court* (1965) 232 Cal.App.2d 284, 287 [42 Cal.Rptr. 676], it was cogently said that "[n]either presence at the scene of a crime, nor failure to take steps to attempt to prevent a crime, establish that a person is an aider or abettor. Such would merely be evidence to be considered along with other evidence in passing upon the question of guilt." Although mere presence at the scene of a crime is insufficient to establish that an accused is an aider or abettor, "[a] person present when a crime is committed who engages in conduct aiding and assisting the perpetrator with knowledge of the latter's criminal intent, aids and abets in its commission." (*People* v. *Herrera* (1970) 6 Cal.App.3d 846, 852 [86 Cal.Rptr. 165].)

■ In view of the inability of the victim Langley to identify any of the three individuals he saw other than George, appellant David contends that the evidence is insufficient to sustain a finding that he participated as an aider or abettor in the robbery of Langley.

■ We start with the doctrine of appellate review that if there is substantial evidence to support the trial court's judgment, it must be affirmed. (*People* v. *Redmond* (1969) 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321].) As a part of the substantial evidence rule, all inferences and intendments must be considered in favor of the trial court's judgment. (*In re Roderick P.* (1972) 7 Cal.3d 801 [103 Cal.Rptr. 425, 500 P.2d 1].)

In determining whether there was substantial evidence in the case at bench, the burden of proof is not without consequence. ■ We must look to the applicable burden-of-proof standard in determining the sufficiency of the evidence to sustain the trial court's finding, although the question before us is not whether guilt is established beyond a reasonable doubt. (*Redmond, supra,* 71 Cal.2d 745; *People* v. *Hillery* (1965) 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382].) " ' "[T]he appellate court is required to determine whether a reasonable trier of fact could have found that the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. [Citations.]" ' " (*In re Roderick P., supra,* 7 Cal.3d 801, 808-809.) ■ The question before us, therefore, is whether, in light of the evidence contained in the record, a reasonable trier of fact could have found that the prosecution had sustained its burden of proving beyond a reasonable doubt that David K. had committed the offense of robbery of Langley by aiding or abetting George G. in its commission. We conclude that no reasonable trier of fact could have so found.

The People argue that the totality of circumstances in the case at bench is sufficient to support the trial court's finding. The People rely upon cases such as *People* v. *Neder* (1971) 16 Cal.App.3d 846 [94 Cal.Rptr. 364] and *People* v. *Perryman* (1967) 250 Cal.App.2d 813 [58 Cal.Rptr. 921]. In *Neder,* the defendant was charged with forgery. The evidence established that the defendant accompanied a codefendant to a department store where purchases were made and the codefendant forged a signature on the credit card. Here the defendant was present at the commission of the offense and clearly participated with the codefendant in the use of a stolen credit card to obtain merchandise.

In *Perryman,* the defendant was convicted of burglary from evidence that shortly prior to the burglary he was observed in the presence of codefendants who committed the burglary and shortly thereafter was seen with the other codefendants in the same vehicle cruising around the immediate vicinity. As in *Neder,* the court held that the evidence was sufficient to convict the defendant as an aider and an abettor.

The People also rely upon *In re Lynnette G.* (1976) 54 Cal.App.3d 1087 [126 Cal.Rptr. 898]. As in *Neder* and *Perryman,* the evidence in *Lynnette G.* established that the defendant, convicted as an aider and abettor of a robbery, was present at the scene of the robbery, ran from the scene with the other principals involved and, shortly thereafter, was still in the company of the person identified as the robbery perpetrator.

The evidence in the case at bench is completely different from the evidence held sufficient to establish a defendant as an aider and abettor in *Neder, Perryman,* and *Lynnette G.* The only evidence to connect the minor David with the robbery of Langley is the fact that three hours after the robbery, in a city some distance from the site of the robbery, David was found in the company of the identified robber in the stolen automobile with personal property of the victim being found in open view in the automobile. No cash proceeds of the robbery were found on David's person and the empty wallet, purse and binoculars belonging to Mrs. Langley were in the back seat where David was seated. There is no evidence, however, that he was exercising any dominion or control over these articles. The situs of the articles as being in the back seat of the automobile where David was seated does not tend to establish that David was exercising any control over these articles.

To draw an inference from these facts that David was one of the three persons at the site of the robbery three hours earlier in another city would amount to pure speculation. It is to be noted that Langley identified only the minor George as the actual perpetrator and gave a description to the police that all three persons involved were of Latin descent and were young adults. By no stretch of the imagination did appellant David, a Caucasian, fit into any of the categories.

The instant case, with its insufficiency of the evidence to establish aiding and abetting, is not too dissimilar to *People* v. *Drolet* (1973) 30 Cal.App.3d 207 [105 Cal.Rptr. 824]. In *Drolet,* one of the defendants was charged with oral copulation and of a conspiracy to engage in oral copulation in violation of Penal Code sections 288a and 182. The acts of oral copulation were performed on a theatrical stage by actors. Defendant's conviction was predicated on a theory of aiding and abetting because he was the employer of the actors and the producer of the show. No evidence was presented that the defendant, convicted as an aider and abettor, had any knowledge that the actors involved in the performance were going to commit acts in violation of Penal Code section 288a. The *Drolet* court held that the fact that the defendant was an employer of the actor and a producer of the show was insufficient to convict him on the theory that he aided and abetted the actual participants.

The People urge that there was additional evidence to support an aiding and abetting theory against the minor David. This evidence came from a Yuba City police officer, who testified that he had been advised by a citizen informant of an attempted robbery in Yuba City by three suspects—two male Mexicans and a white male with a pair of binoculars; that the three suspects were seen to run and that the three minors later seen in Langley's stolen automobile met the description given by the informant in Yuba City. This testimony by the Yuba City police officer can provide no assistance for the finding that David participated in the Langley robbery. The evidence was admitted at the San Francisco adjudication hearing solely for the purpose of establishing probable cause for the arrest of the three minors by the Yuba City police officer. It was neither offered nor received as any evidence tending to establish David's guilt of the robbery offense.[1]

We conclude, therefore, that David's contention that the evidence was insufficient to sustain the San Francisco Juvenile Court's finding that he had committed a robbery of Langley must be sustained.

[1]The dissenting opinion points out that a probation officer testified in the San Francisco proceeding that all three minors were from Canoga Park in Los Angeles County. However, there was no evidence introduced that the minors even knew each other while living in Canoga Park, or had any contact with each other in San Francisco. The dissent would authorize the trial court to speculate from the fact that the three minors were from Canoga Park, that they were together in San Francisco and participated in the robbery there. Evidence that produces only speculative inferences cannot be considered relevant evidence to lend support to a finding.

## II

### *The Question of Whether the Juvenile Court Abused Its Discretion in Committing Appellant to the California Youth Authority*

 Since we reverse the adjudication order made by the San Francisco Juvenile Court, the commitment of the minor to the California Youth Authority by the Los Angeles Juvenile Court, based in part upon the San Francisco adjudication, must be reversed.

In the case at bench, the Los Angeles Juvenile Court had before it the probation officer's report or social study made by the probation officer of Los Angeles County. The probation officer recommended that the minor be placed in the camp community placement program.

The Los Angeles Juvenile Court judge rejected this recommendation and ordered a Youth Authority commitment based on two factors. The first was that, in transferring the case to the Los Angeles County Juvenile Court, the San Francisco Juvenile Court judge recommended a Youth Authority commitment. The second factor was that the probation officer's report indicated that the minor refused to talk about the Sutter County crime either in terms of denying his involvement or admitting his involvement or explaining why he was doing neither.

 We point out that the failure of a minor to admit his participation in the commission of an offense or his failure to evidence contriteness is not a justification for using the Youth Authority commitment even though the crime committed is a serious one. This is especially true in the instant case in the face of the facts that the minor had reached the age of 17 without having had any prior arrests and with no indication that the rehabilitative services of a camp placement would fail. A Youth Authority commitment cannot legally be made by the juvenile court as a means of *punishment* rather than a final resort for rehabilitation. The record before us supports the view that the commitment was made to *punish* David for his failure to talk about the Sutter County offense.

### III

### *The Attack Upon the Sutter County Juvenile Court Adjudication*

In his opening brief, the minor seeks to attack the adjudication in the Sutter County Juvenile Court on the theory that the minor's admission of the truth of the allegations contained in the petition was constitutionally defective under *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086], and *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]. These alleged errors cannot be raised on this appeal. The notice of appeal filed under rule 1(a) of the California Rules of Court is an appeal only from specified portions of findings, orders and judgments—the California Youth Authority commitment made by the Los Angeles Juvenile Court, and the adjudication order made in the San Francisco Juvenile Court. Defendant has not taken an appeal from the adjudication order made by the Sutter County Juvenile Court.

The findings and judgment made by the County of San Francisco Juvenile Court are reversed. The order of the Los Angeles Juvenile Court committing the minor to the California Youth Authority is reversed.

Kingsley, Acting P. J., concurred.

**HUPP, J.***—I dissent.

The majority opinion makes a full and fair recitation of the facts. However, one item of testimony is not covered in the recitation. A San Francisco probation officer was called by the People to testify regarding certain alleged admissions by the minor. The admissions were excluded because the judge was not satisfied that they were voluntary. However, without objection, the probation officer did testify that all three minors were from Canoga Park in Los Angeles County. It seems to me that this circumstance added to the evidence summarized in the majority opinion pushes the case over the substantial evidence line. The trial judge was entitled to consider the odds against the minor being in the stolen car in

*Assigned by the Chairperson of the Judicial Council.

Yuba City with two other minors, all three from the same community, one of whom was identified as one of three robbing a victim in San Francisco three hours earlier (the approximate driving time to Yuba City) as a result of some chance meeting on the road after the robbery. The evidence supports the inference that the minor was one of the three involved in the San Francisco robbery.

The evidence also supports the conclusion that the minor aided and abetted the robbery. The totality of the circumstances is that three minors from Los Angeles County appeared in San Francisco and approached a parked occupied automobile where one of them robbed a man at knife point of his car and its contents while the other two stood by; then all three immediately got in the car and drove to Yuba City. When arrested in Yuba City, the minor David K. was seated in the back seat of the stolen vehicle with the victim's wallet between his legs on the seat and the victim's binoculars on the seat beside him. The circumstances are similar to, if not stronger than, those held sufficient for a finding of guilty in *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094-1095 [126 Cal.Rptr. 898], where the court said: "Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense. [Citations.] In addition, flight is one of the factors which is relevant in determining consciousness of guilt. [Citation.]" To this list might be added, in this case, facts showing possession of part of the loot. (I disagree with the majority that the trial court could not draw an inference of possession from the placement of the wallet on the seat between the minor's legs or the binoculars beside him.) Lesser circumstances were present in *People* v. *Perryman* (1967) 250 Cal.App.2d 813 [58 Cal.Rptr. 921], and were held sufficient to sustain the finding of guilt.

With regard to the commitment to the California Youth Authority (C.Y.A.) I do not agree that the juvenile court judge could not consider the minor's state of mind, including its state of contrition, as a factor in determining the correct disposition. The Supreme Court tells us that the juvenile court judge may consider "candor and contrition" in determining the proper disposition. (*Bryan* v. *Superior Court* (1972) 7 Cal.3d 575, 587 [102 Cal.Rptr. 831, 498 P.2d 1079].) It follows that the judge may consider whether the minor has been candid and cooperative with the probation officer, which he was not here.[1] The rule against using C.Y.A. for

---

[1] Any fear that, if reversal is obtained, the admissions to the probation officer will be used against the defendant on a retrial was set at rest by the Supreme Court in *People* v. *Harrington* (1970) 2 Cal.3d 991, 999 [88 Cal.Rptr. 161, 471 P.2d 961], wherein it is said:

punishment is not violated by consideration of factors which go toward predicting the type of custodial facility necessary to set the minor on a noncriminal path. However, I would agree that the judge should be satisfied that factors other than obduracy, such as an attorney's advice, have not caused the minor to refuse to talk to the probation officer.

I would affirm all three orders.

A petition for a rehearing was denied May 3, 1978, and respondent's petition for a hearing by the Supreme Court was denied June 15, 1978. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.

---

"In addition, admissions made to a probation officer in the hope that candor will persuade the probation officer to make a favorable report to the court are not admissible either for substantive evidence or for impeachment in any retrial on the same issues." (See also *Bryan* v. *Superior Court, supra,* 7 Cal.3d 575, 586-587.) It follows that refusal to talk to a probation officer after trial is not justified on such ground. In addition, in this case, the Yuba City offense was admitted by the minor in the Sutter County Juvenile Court.