[Crim. No. 11441. Fourth Dist., Div. One. July 8, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDALL DAVID JONES, Defendant and Appellant.

COUNSEL

Appellate Defenders, Inc., under appointment by the Court of Appeal, Handy Horiye and Geraldine S. Russell for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Michael D. Wellington and Bruce Daniel Rosen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, J.**—Defendant pleaded guilty to two separate robberies of taxicab drivers (Pen. Code, §§ 211, 211a) after his motion to suppress evidence (Pen. Code, § 1538.5) was denied. In his appeal from the judgment he contends (1) the trial court erred in denying his motion to suppress because the police officer did not have probable cause to arrest him; and (2) the sentencing judge abused his discretion in denying probation by considering facts underlying dismissed counts pursuant to a plea bargain in reaching his decision. For the reasons which follow, we conclude the former contention to be without merit, but the latter to be persuasive. Accordingly, the judgment is reversed solely as to the denial of probation, and affirmed in all other respects.

*Factual and Procedural Record*

Defendant was originally charged with nine counts of robbery of taxicab drivers. Pursuant to a plea bargain, he pleaded guilty to two of

them in return for the dismissal of the remaining counts. The parties concur the facts underlying the admitted counts are adequately summarized in the probation officer's report appearing in the margin below.[1]

Defendant initially moved to suppress evidence obtained as a result of his arrest in another case which led to the filing of the charges in the instant case. The relevant facts of that arrest are as follows:

At about 4 p.m., January 6, 1979, Craig Runaas entered an elevator at the Pickwick Hotel. At the same time, Victor Hollinshed and defendant entered the elevator together. After the elevator started, Hollinshed grabbed Runaas by the throat, backed him into the corner and said: "This is a robbery. Give me your money." Runaas did not resist because he felt threatened by defendants' presence. Hollinshed removed approximately $30 from the victim's person and pushed him out of the elevator when it stopped at the sixth floor. Defendant remained inside the elevator with Hollinshed as it started to descend.

---

[1]The probation report reads in pertinent part: "THE OFFENSE: "The following information was contained in the San Diego Police Department reports and in preliminary examination transcripts, dated 1-23-79.

"*Regarding Count One*: Victim Richard Christianson testified that on 12-8-78, at approximately 11 p.m., he picked up two black males in his taxicab at Fourth and Broadway. These men asked to be taken to the 200 block of South Gregory. When the taxi arrived there, the taller of the two men grabbed the driver around the neck and the other one jumped over the seat and turned off the vehicle and the radio. They asked where the money was. The two men took approximately $35 from the driver's pockets. The driver then got out and ran around the corner. After the two men left, the victim radioed for help. Mr. Christianson testified that Hollinshed and Jones looked similar to the two men who robbed him.

"*Regarding Count Nine*: Victim Wayne Lynn Reed testified that on 1-2-79, at approximately 6:20 p.m., he picked up two men at the Greyhound Bus Depot. They handed him a piece of paper with a South 36th Street address on it. One of these men sat in the front and one in the back, the shorter one in front. At that address, no one was home so they went to 214 Gregory Street. There, the short one went upstairs to an apartment and had a short conversation with someone inside the apartment and returned to the cab. He got in and said that this was the place and started looking through his wallet and then looked through his pockets. He then asked his friend in the back seat to hand him a small canvas bag that they were in possession of. The man in front began going through the bag, at which point the man in the back grabbed the driver around the neck. The driver opened his door and attempted to get out, which he was not able to do. The driver then attempted to hit the gas pedal to move the vehicle out into the intersection. The one in front then put the vehicle in park and pulled out the keys. The two men then went through the victim's pockets and took $61 in cash, as well as a set of keys and a cigarette lighter."*

---

*Defendant was the taller of the two men involved, while codefendant Victor Hollinshed was the other accomplice.

Runaas ran down to the lobby and informed the desk clerk and some friends of the robbery. He then saw defendant and Hollinshed coming down the stairs together from the mezzanine balcony. He pointed them out. The desk clerk then told them to stop. Upon failing to do so, a friend of Runaas, Michael Sommers, apprehended defendant. Hollinshed escaped by running out the hotel entrance.

San Diego Police Department Sergeant Richard Davis responded to the radio broadcast of the robbery. Runaas told him he had been robbed and identified defendant as one of the robbers. Davis arrested defendant, handcuffed him and had him sit on a nearby bench. Officers Dorsey and Green then arrived and assumed the investigation. The latter questioned the victim about the robbery. He related the facts above, specifically stating that he did not resist because defendant was "standing by in a piercing or threatening manner." From the information made known to him, Officer Green concluded defendant was in fact involved in the robbery. Defendant was taken to the police station and searched, producing a motel room key which led to the apprehension of Hollinshed. When searched, a locker key was found on Hollinshed which led to the evidence relevant to the instant case.

I

Defendant contends the court erred in denying his motion to suppress evidence because the officers' investigation failed to reveal sufficient information to establish probable cause for arrest for robbery based upon the theory he was an aider and abettor.

"'Cause for arrest exists when the facts known to the arresting officer "would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." [Citations.]' (*People v. Harris* (1975) 15 Cal.3d 384, 389 [124 Cal.Rptr. 536, 540 P.2d 632].)" (*People v. DeVaughn* (1977) 18 Cal.3d 889, 895 [135 Cal.Rptr. 786, 558 P.2d 872].) In order to arrest defendant as an aider and abettor, the officers must have had probable cause to believe he had in some way, "'directly or indirectly, aided the perpetrator or advised and encouraged commission of the offense with knowledge of the latter's wrongful purpose.'" (*In re David K.* (1978) 79 Cal.App.3d 992, 998 [145 Cal.Rptr. 349], quoting *People v. Butts* (1965) 236 Cal.App.2d 817, 836 [46 Cal.Rptr. 362].)

■ Consequently, "'[t]o be an abettor the accused must have *instigated or advised* the commission of the crime *or been present for the purpose of assisting in its commission . . .*, shar[ing] the criminal intent with which the crime was committed. . . .'" (*People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198], quoting *People* v. *Villa* (1957) 156 Cal.App.2d 128, 133-134 [318 P.2d 828].) Evidentiary considerations which are probative of whether one is an aider and abettor include presence at the scene of the crime, failure to take steps to attempt to prevent the commission of the crime, companionship, flight, and conduct before and after the crime. (*In re David K., supra,* 79 Cal.App.3d at p. 998; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094-1095 [126 Cal.Rptr. 898]; *Pinell* v. *Superior Court* (1965) 232 Cal.App.2d 284, 287 [42 Cal.Rptr. 676].)

■ The circumstances known to the officers before they arrested defendant adequately establish probable cause to arrest him for the crime in controversy. The victim told the officers he had been robbed and identified defendant as one of the two robbers. He explained the commission of the crime in detail, including defendant's entering the elevator with Hollinshed, his standing there in a "menacing" and "threatening" manner during the robbery persuading the victim not to resist, his and Hollinshed's immediate descent in the elevator from the sixth floor without getting out, and their leaving the elevator and attempt to leave the premises together. Indeed, defendant's conduct was not consistent with innocent behavior (*People* v. *Martin* (1973) 9 Cal.3d 687, 692 [108 Cal.Rptr. 809, 511 P.2d 1161]), as its suspicious nature of riding up and down in the elevator without leaving when it stopped on the sixth floor and failing to immediately disassociate himself from the perpetrator of the crime upon leaving the elevator, logically implies complicity. Finally, regarding defendant's assertion an overt act is required, one's "threatening" presence employed as less than subtle persuasion in order to avoid any further physical violence with the victim and to secure the latter's cooperation constitutes affirmative action.

## II

■ Defendant next contends the denial of probation was an abuse of discretion because the court considered the dismissed counts in reaching its decision.

■ "Reliance, for the purpose of aggravation, upon a count, not transactionally related to the sentencing charge and dismissed pursuant to a plea bargain, is improper." (*People* v. *Davis* (1980) 103 Cal. App.3d 270, 280 [163 Cal.Rptr. 22].) "Implicit in such a plea bargain...is the understanding (in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed count(s)." (*People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396].) ■ A fortiori reliance upon dismissed counts, or the facts underlying them which are not transactionally related to the admitted offenses, for denying probation is improper. (Cf. Cal. Rules of Court, rules 414 and 421.)

The Attorney General asserts this proposition was first articulated in *People* v. *Harvey, supra*, 25 Cal.3d 754, and is not retroactively applicable to the instant case. The *Harvey* decision was rendered in November 1979, approximately four months after defendant was sentenced. This assertion is without merit.

■ "Where a rule of decisional law is enunciated as an application of a previously existing principle, it must be applied in all open cases. [Citation.] Where a new rule of law is stated, however, the retroactivity of a decision must be established by the court faced with the application of that ruling...[, by considering] [t]he critical factors...of...(1) the purpose of the new rule, (2) the reliance by law enforcement authorities on the old rule, and (3) the effect on the administration of justice of retrospective application of the new rule. [Citation.]" (*People* v. *Sanford* (1976) 63 Cal.App.3d 952, 956-957 [134 Cal.Rptr. 155]; see *People* v. *Whittington* (1977) 74 Cal.App.3d 806, 823 [141 Cal.Rptr. 742].) ■ Consequently, the threshold inquiry in determining whether a decision should be given retroactive effect is whether it establishes a new rule. "If it does, we proceed to test whether the new rule is retroactive. If it does not, no such testing is necessary and, by definition, without a new rule, there is no change in the law and the question of retroactivity is immaterial.... [T]o constitute a new rule, the decision must either (1) overrule clear past precedent or (2) disrupt a practice long accepted and widely relied upon." (*United States* v. *Bowen* (9th Cir. 1974) 500 F.2d 960, 975.) ■ *People* v. *Harvey, supra,* does neither. The Supreme Court simply applied contract principles in construing the parties' plea bargain.

The totality of circumstances set forth within the record establishes that the trial court improperly considered the dismissed counts as part of defendant's record in denying probation. There were originally nine counts in the information of which seven were dismissed pursuant to the plea bargain. The probation report summarized individually each of the counts, including those dismissed. One of the defendant's section 1203.03 diagnostic evaluations noted defendant's admission to twelve robberies using the same modus operandi during the time span in controversy. Both parties referred to this admission during argument. The diagnostic study recommended probation. In denying probation, the court stated in pertinent part: "[F]rom your record, I don't think you're entitled to probation. I think you have earned your way to prison, son." The sentencing judge later explained: "In almost *every* instance Jones choked the driver." (Italics added.) This language reveals the trial court's reliance upon more than two admitted counts. The language "choked the driver" appears in the probation report in the descriptions of four of the nine counts, while language to the effect he "grabbed the driver around the neck" was used in the remaining counts including the two admitted to pursuant to the plea bargain. Consequently, the trial court's reference to defendant's "record" in denying probation included its consideration of the dismissed counts, as well as defendant's singular prior conviction for robbery in the service. The record further reflects the "possibility" the trial court may have relied upon the dismissed counts due to defendant's noted admission to the 12 robberies, which included those alleged within the dismissed counts. Accordingly, since the trial court considered the dismissed counts in violation of the principles articulated in *People* v. *Harvey, supra*, the cause should be remanded for rehearing on the issue of probation. (See *People* v. *Harvey, supra*, 25 Cal.3d at p. 759.)[2]

---

[2]Relying on the admission appearing in the diagnostic evaluation and language in *People* v. *Harvey, supra*, 25 Cal.3d at page 758, and *People* v. *Guevara* (1979) 88 Cal.App.3d 86, 94 [151 Cal.Rptr. 511], the Attorney General argues the trial court may properly consider the admitted robberies since a plea bargain does not expressly or impliedly preclude the sentencing court from reviewing all the circumstances relating to "admitted offenses." However, the quoted language from the cited decisions contemplates charges to which defendant pleaded guilty pursuant to the plea bargain within a judicial setting surrounded by the settled constitutional safeguards, not to dismissed offenses later admitted in an extrajudicial setting. Here, defendant's admission was made following consummation of the plea bargain to correctional authorities during the diagnostic study under unknown circumstances. The parties do not argue and we need not address under the circumstances of the instant case the effect of *People* v. *Harvey, supra*, upon the use of a Penal Code section 1203.03 diagnostic study alone.

*Disposition*

The judgment is reversed as to the denial of probation and remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

Brown (Gerald), P. J., and Staniforth, J., concurred.