Filed 4/30/14  In re N.T. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.T., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>N.T.,<br><br>    Defendant and Appellant. | E058818<br><br>(Super.Ct.No. J247375)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Barbara A. Buchholz, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Marissa Bejarano, Deputy Attorneys General, for Plaintiff and Respondent.

1

In an amended wardship petition, the People alleged N.T. (minor) committed misdemeanor battery on school property (Pen. Code, § 243.2, subd. (a)(1)), and felony robbery (Pen. Code, § 211). In this appeal, minor contends there is insufficient evidence in the record to support the juvenile court's order finding she committed the alleged robbery. According to minor, the eyewitnesses who identified her as participating in the robbery gave contradictory and unbelievable testimony, which is not of solid value and must be rejected on appeal. Applying the settled standard of substantial evidence review, we affirm the judgment.

I.

FACTS

On the afternoon of April 15, 2013, S.A. and her friend J.C. were walking home from an art supply store when someone ran up to S.A., grabbed at her bag, and started hitting her. S.A. testified she was confronted and hit by a group of males and females, which included minor. S.A.'s bag contained her cellular telephone, an iPod, her identification, and the items she purchased at the art supply store. During the assault, S.A. tried to hold her bag by putting it underneath her body. S.A. was hit in the face and kicked in the back, and eventually let go of her bag because too many people were hitting her. Her mother arrived shortly thereafter, at which time one of the female attackers was still hitting S.A. An officer with the San Bernardino Police Department responded about 15 to 20 minutes after the attack. The officer took S.A. to three different locations to look at two males and three females who might have been involved in the assault and robbery, and S.A. identified the three females as having participated in the attack.

2

On cross-examination, S.A. testified one of the females who hit her—whom she later identified as minor—was about 16 or 17 years old and was dressed in Angry Birds print pajama pants. Before the police arrived, S.A. saw minor take off her pajama pants and run toward an apartment building. S.A. testified minor's pajama pants were red, and she was wearing black leggings underneath. S.A. pointed out minor to the police, who then detained minor. Minor's hair was died light brown or blond in the front. S.A. testified she saw minor's face during the attack, and she recognized minor in court. She testified she did not have her hands up to her face during the attack because she was holding her bag. S.A. testified she saw three females hit her and pull at her bag. After the attack, S.A. followed minor because she was the last one still at the scene. S.A. testified when her mother arrived, they drove to the apartment complex S.A. saw minor run toward.

An officer with the San Bernardino Police Department testified he was dispatched to investigate a report of a robbery in the area of 17th and D Streets. He made contact with minor, who was wearing a black shirt, black tights, and black and grey boots. Minor had a pair of Angry Birds pajama pants with her. S.A. told the officer minor was involved in the attack. The officer then performed an in-field showup with minor, and told S.A. minor may or may not have been involved in the assault and robbery. S.A. again positively identified minor as having been involved.

On cross-examination, the officer testified minor's hair in her booking photo was much lighter, almost dirty blond, than it was as minor appeared in court. The officer also testified he thought minor's Angry Birds pajamas were black.

3

J.C. testified he and his girlfriend S.A. were robbed and attacked by a large group of as many as 12 people, which included minor. He testified minor and the other females in the group kicked S.A. When S.A.'s mother arrived, the group scattered. Minor was still fighting with S.A. at that time, but she then ran away. After calling the police, S.A., her mother, and J.C. drove around looking for the people who were involved in the attack. J.C. testified he had never seen minor before that day.

On cross-examination, J.C. testified he did not see minor try to take S.A.'s bag, and he did not get a good look at the female who did. J.C. saw minor kick S.A. while she was on the ground. He testified minor was wearing Angry Birds print pajama pants during the attack. J.C. testified minor was the only one of the attackers wearing Angry Birds print pants, and he believed minor's pajama pants were red. He testified the female he saw wearing Angry Birds pajama pants had "orangish [*sic*] blond" hair. J.C. testified he was being hit by two or more males, but when they backed off, he saw S.A. being kicked by the females. J.C. testified when he, S.A., and S.A.'s mother were driving around, they followed another member of the group but lost them in an alleyway. They then drove to an apartment complex where they met with the police officer. S.A. then drove off with her father, who had arrived separately, to another apartment complex.

On redirect, J.C. testified he was about three feet away from S.A. as she was being kicked, and he was able to get a good look at minor for about 10 seconds.

Minor testified on the day in question she walked with a friend to the friend's house. As she later walked home, minor saw two or three Black youths who she knew, and started walking with a male friend. As minor walked with her friend, a black car

4

pulled up and a man carrying a hammer or something else in his hand got out of the car and ran toward her. Minor ran off, and when she saw a police officer she ran toward him. As minor ran toward the officer, she saw S.A. point out minor to her mother, and heard S.A. say, "her with the Angry Birds sweats on." Minor ran off, hopped a gate, and hid underneath a car. She then removed her sweats, hopped back over the gate, and started to walk home again. Minor flagged down a police officer and asked for help, but the officer placed her in handcuffs. S.A. then walked up and, from five or six feet away from minor, told the officer, "her."

Minor testified she removed her sweatpants because she was scared of the man who chased after her, and she did not want to be found. Minor testified her sweatpants were blue, and she never owned a pair of red Angry Birds pants. She did not see anyone else wearing Angry Birds pajama pants. Minor testified she did not hit or kick S.A., and she did not try to take S.A.'s bag. She testified her hair was not blond on the day S.A. was attacked, and she was wearing her hair in a bun. Minor also testified she had not change her hair color since being released from custody. She believed she was misidentified as having participated in the attack.

The juvenile court found the People did not prove the allegation minor committed a battery on school property. With respect to the alleged robbery, the juvenile court acknowledged the key issue in dispute was the identification of minor as one of the perpetrators. However, the court found S.A. and J.C. gave consistent testimony identifying minor, and noted they both testified minor wore "a remarkable garment, that being the Angry Birds pajama bottoms." The court also found the People proved beyond

5

a reasonable doubt minor was involved in the robbery.  Thereafter, the juvenile court declared minor a ward of the court and placed her in the custody of her sister, subject to conditions of probation.

Minor timely appealed.

## II.

## DISCUSSION

In this appeal, minor contends the evidence linking her to the robbery of S.A. is not of solid value because S.A.'s and J.C.'s identification testimony was "inherently incredible, improbable, and border[ed] on physically impossible . . . ."  We disagree and affirm the judgment.

"The law regarding appellate review of claims challenging the sufficiency of the evidence in the juvenile context is the same as that governing review of sufficiency claims generally.  [Citation.]  In determining the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Citation.]  '[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citation.]"  (*In re Z.A.* (2012) 207 Cal.App.4th 1401, 1424-1425.)

"'"[O]ur role on appeal is a limited one."  [Citation.]  Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact

6

that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' [Citation.]" (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.) "An appellate court must not reweigh the evidence [citation], reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact [citation]." (*People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268 (*Xiong*).)

The eyewitness testimony of one witness who is believed by the trier of fact is sufficient proof to support the judgment. (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497.) Purported weaknesses in eyewitness testimony are to be evaluated by the trier of fact, not by a reviewing court. (*People v. Mendez* (2010) 188 Cal.App.4th 47, 59 (*Mendez*); *People v. Keltie* (1983) 148 Cal.App.3d 773, 781-782.) "'"To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falisty must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]"' [Citations.] Further, a [trier of fact] is entitled to reject some portions of a witness' testimony while accepting others. [Citation.]" (*People v. Allen* (1985) 165 Cal.App.3d 616, 623 (*Allen*).)

Both S.A. and J.C. positively identified minor in court as having been involved in the attack, and both testified minor kicked S.A. as she was on the ground holding her bag. The officer also testified when he arrived on the scene to investigate the robbery, S.A. pointed minor out to him as one of the females involved in the attack, and S.A. later positively identified minor during an in-field showup. S.A. and J.C. testified consistently one of the females who attacked S.A. was wearing Angry Birds print pajama pants, and they had seen minor wearing such pants. S.A. testified she saw minor remove her Angry Birds pants after the attack, and J.C. testified minor was the only female involved in the attack who wore such pants. The officer testified when he detained minor, she was holding a pair of Angry Birds pajama pants. Likewise, S.A and J.C. testified one of the attackers, who they identified as minor, had light colored hair in the front. The officer testified minor had light colored hair when he detained her. From this testimony, a reasonable trier of fact could conclude beyond a reasonable doubt minor participated in the robbery. Therefore, we must conclude the judgment is supported by substantial evidence.

Minor contends the identification evidence was not of solid value and did not constitute substantial evidence because it would have been almost impossible for S.A., who was on the ground holding her bag, and J.C., who was getting hit by at least two males, to get a good look at the faces of the females who kicked S.A. But S.A. specifically testified she did not have her hands up to protect her face because she was holding her bag, and she clearly saw minor's face. Likewise, J.C. testified although he was getting hit by at least two males when his attackers backed off, he was able to get a

8

good look at minor's face for at least 10 seconds. The juvenile court believed S.A.'s and J.C.'s identification testimony, and because their testimony was not facially impossible, we may not second-guess the juvenile court's implied determination of credibility. (*Xiong*, *supra*, 215 Cal.App.4th at p. 1268; *Allen*, *supra*, 165 Cal.App.3d at p. 623.)

Minor also contends she was targeted solely because she was the only female in the area wearing Angry Birds pants, and she implies the identification testimony must be rejected because the pants she wore did not match the color the witnesses identified. S.A. and J.C. testified minor wore red Angry Birds print pajama pants, and the officer testified he thought minor had black Angry Birds pants with her. In contrast, minor testified the Angry Birds pants she wore on the day in question were blue, and she had never owned a red pair of Angry Birds pants. Minor introduced as an exhibit the blue pants taken from her when she was detained. As already noted, weaknesses and conflicts in eyewitness testimony are evaluated by the trier of fact when determining the credibility of the witness or witnesses. (*Mendez*, *supra*, 188 Cal.App.4th at p. 59; *Allen*, *supra*, 165 Cal.App.3d at p. 623.) The juvenile court expressly noted S.A. and J.C. were consistent in their testimony that minor wore Angry Birds pants, which the court described as "a remarkable garment." The juvenile court could have reasonably concluded although the witnesses may not have had perfect recall about the color of the pants or about other aspects of the incident, their memory of the distinctive print was credible in light of their clear and consistent testimony they got a good look at minor's face as she was kicking S.A.

9

Finally, in support of her claim she was simply misidentified, minor points to the fact she was not found in possession of S.A.'s property, and the People introduced no DNA or fingerprint evidence linking her to the robbery. The eyewitness testimony identifying minor as having participated in the robbery by kicking S.A. as she lay on the ground clutching her bag is substantial evidence to support the juvenile court's finding of fact minor did participate in the robbery (*In re Gustavo M.*, *supra*, 214 Cal.App.3d at p. 1497), and that testimony did not need to be corroborated by physical evidence tying minor to the robbery (*People v. King* (1967) 255 Cal.App.2d 551, 555).

III.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER_____
Acting P. J.

We concur:

KING_____
J.

MILLER_____
J.