[No. H005463. Sixth Dist. Oct. 26, 1989.]

In re GUSTAVO M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GUSTAVO M., Defendant and Appellant.

## COUNSEL

Arthur Dudley and Page & Coben for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Christopher J. Wei, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—Gustavo M., a minor placed at the California Youth Authority (hereafter, CYA) for a maximum term of six years, appeals from the judgment of the San Benito County Juvenile Court declaring him a ward of

the court pursuant to Welfare and Institutions Code section 602,[1] on the finding that he had committed the offenses of assault with intent to commit rape (Pen. Code, § 220) and sexual battery (Pen. Code, § 243.4).

We affirm the order committing appellant to the CYA and remand for proceedings consistent with this opinion.

## FACTS

On December 22, 1986, 28-year-old Karen C. was alone at the Hollister Community Center around 8 p.m., locking up after her dance-exercise class had finished. A karate class held in an adjacent room had ended earlier and everyone had apparently gone home. However, as she checked the room before turning on the alarm system, she saw a young male behind a partition. She gave him a look as if to say, "leave," and he walked toward the door, but then turned and came toward her. They struggled briefly, then he applied a wrestling hold known as a "takedown," and they landed on the floor. Karen was five feet one inch and 118 pounds; the young man was about five feet eight inches and 150 pounds.

As they struggled together on the floor, he tried to remove her clothing, but was unsuccessful since she was wearing a one-piece leotard, tights, parachute pants, leg warmers, and a sweatshirt. However he did pull the upper right portion of her leotard and her right bra strap down over her right shoulder, briefly touching her breast in a "very awkward caress." As they struggled, he touched her chest "a lot" through her clothing, and touched her vaginal area on the outside of her clothing while he tried to remove her pants. Karen was angry and repeatedly asked him what his problem was. He said: "You know what I want. Are you going to give me what I want?" At one point, she said: "Let's talk," to which he responded: "I don't want to talk. Talking got me put away before."

During the assault, he started to choke her, bent her arm back and threatened to break it, saying "I'll break your arm, I've done it before; I know how it feels." She told him she was pregnant, and asked him not to harm her baby, to which he responded by raising his fist over her abdomen, telling her that he would kill it if she did not give him what he wanted. He also kicked or kneed her in the back. While she was on the floor looking at his face, she tried to think of distinctive marks or anything that would help later on in finding him. She managed to get into a sitting position and, as he briefly let go, she ran out of the room without looking back.

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

To police, she described her attacker as possibly 18 to 20 years old, with no beard, mustache, or "five o'clock shadow," about 5′ 8″ and 150 pounds, with a medium build and curly brown hair and eyes, of Caucasian–Mexican descent, but without an accent. He was wearing dirty gray sweatpants, a zip-up hooded sweatshirt, and a pink or peach dress shirt. His most memorable feature was his eyes, which slanted under thin, light eyebrows.

The next day, she assembled a composite drawing and repeated her original description. She eventually examined between 200 and 300 photographs, and did not identify her attacker. Finally, in August 1988, she was shown a photo lineup of six subjects. Appellant's photograph made her nervous when she saw it. "This sure could be him," she said. "He's a lot fatter now." She identified another photograph of him in a yearbook, saying she was greater than 50 percent sure but not 100 percent sure. However, when she saw him in person in a lineup, she was certain. She again identified him at the jurisdictional hearing on October 11, 1988, and identified a photograph of him that was proffered by the defense.

Karen admitted she was a poor judge of weight and that she might have been wrong about her estimate. She also testified that she thought she saw her assailant on two later occasions, but that since she had not been sure, she had not notified the authorities.

Appellant offered a declaration from his physician that he weighed 179 pounds in October 1988. Appellant's sister testified that she heard the district attorney ask Karen if she was sure of her identification, and that Karen answered that she was "pretty sure" but not "really sure," and that the district attorney told her to say she was "sure."

Appellant denied assaulting Karen and claimed that he had never seen her before although he had been present at many ballgames in which her boyfriend had been playing, and although he had worked at the community center for five days in 1987 during a time when Karen was teaching a class there. He was 15 years old; he had never worn his hair over his ears as depicted in the composite drawing, and he had been a high school wrestler for two years. He was not sure if he owned a gray sweatshirt, and he did not own gray sweatpants.

### CONTENTIONS ON APPEAL

Appellant now argues that the proceedings were barred by the applicable statute of limitations, that there was insufficient evidence that he was the attacker, that there was insufficient evidence to support a finding of sexual

battery, and that the court erred in failing to award precommitment custody credits.

## DISCUSSION

### *Statute of Limitations*

Appellant presents a question of first impression. ▪ He contends that since imprisonment is not available as a penalty for a minor adjudicated a ward of the court under section 602 because of a criminal offense, the one-year statute of limitations enunciated by Penal Code section 802 should apply.[2] He urges us to accept the reasoning that since a juvenile proceeding does not transform a minor's conduct into either a "felony" or a "misdemeanor" (citing *In re Anthony R.* (1984) 154 Cal.App.3d 772, 778 [201 Cal.Rptr. 299]), and "since a minor ward, at worst, may only be confined in a Youth Authority facility, rather than imprisoned in state prison, the minor's conduct cannot ever be correctly classified as a 'felony' even if it had been perpetrated by someone actually subject to punishment as an adult" (citing *In re Michael S.* (1983) 141 Cal.App.3d 814, 817 [190 Cal.Rptr. 585]). Therefore, he argues, the case against him should be time barred, since the petition in his case was not filed until a year and seven months after the offense.

Respondent answers that the applicable statute of limitations should be determined as it is for adults, namely, by reference to the penalty provided by the Legislature, regardless of the fact that a juvenile may not be sent to state prison. Respondent argues since appellant's offenses, proscribed under Penal Code sections 220 and 243.4, were alleged as felonies in the petition, were determined to be felonies by the court,[3] and would be punishable by imprisonment were appellant an adult, the three-year statute of limitations provided by Penal Code section 801 should apply.

We agree that Penal Code section 801 is applicable.

▪ " 'The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official

---

[2] Penal Code section 802, subdivision (a), provides: "Except as provided in subdivision (b), prosecution for an offense not punishable by death or imprisonment in the state prison shall be commenced within one year after commission of the offense."

[3] This finding was not made expressly. See *post*.

punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.'" (*United States* v. *Marion* (1971) 404 U.S. 307, 323 [30 L.Ed.2d 468, 480, 92 S.Ct. 455] citing *Toussie* v. *United States* (1970) 397 U.S. 112, 114-115 [25 L.Ed.2d 156, 161, 90 S.Ct. 858].)

■ Although a proceeding in the juvenile court is not a criminal proceeding (§ 203), the statutory grant of jurisdiction over a minor under section 602 is based on criminal conduct: "Any person who is under the age of 18 years when he violates any law . . . defining crime other than an ordinance establishing a curfew based solely on age, is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."

■ Just as the running of the statute of limitations bars prosecution of an adult, so does it bar prosecution of a minor. (*State in Interest of B. H.* (1970) 112 N.J.Super. 1 [270 A.2d 72, 74]; see also, 1 Cal. Juvenile Court Practice (Cont.Ed.Bar 1981) § 6.10, p. 179.) Protection from prosecution under a statute of limitations is a substantive, not a procedural, right (*Liebig* v. *Superior Court* (1989) 209 Cal.App.3d 828, 831 [257 Cal.Rptr. 574]), and it is jurisdictional: an indictment or information which shows on its face that prosecution is barred by the statute of limitations fails to state a public offense. (*People* v. *Rehman* (1964) 62 Cal.2d 135, 139 [41 Cal.Rptr. 457, 396 P.2d 913].) The issue of lack of jurisdiction may be raised for the first time on appeal. (*People* v. *Chadd* (1981) 28 Cal.3d 739, 756-757 [170 Cal.Rptr. 798, 621 P.2d 837].)

■ Appellant correctly states that juvenile court proceedings do not result in felony or misdemeanor "convictions." However, the Legislature does require the court to make certain uses of the felony-misdemeanor distinction. ". . . If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." (§ 702.) Furthermore, the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the same offense. (§ 726.)

No specific provision for a juvenile statute of limitations is made in the juvenile court law. The only reference to a statute of limitations at all, in section 605, does not set forth a limit, but seems to contemplate that the limitation of whatever code the minor is alleged to have violated will apply. Section 605 reads: "Whenever a petition is filed in a juvenile court alleging

that a minor is a person within the description of Section 602, and while the case is before the juvenile court, the statute of limitations applicable under the general law to the offense alleged to bring the minor within such description is suspended."

If the Legislature had wanted to enact a different statute of limitations applicable to minors, it could have done so. ■ "[L]egislation that places those subject to the jurisdiction of the juvenile court in a different classification from those not so subject, with regard to conduct of the same general character, is constitutional." (*In re K. D. K.* (1969) 269 Cal.App.2d 646, 653 [75 Cal.Rptr. 136].)

■ Since the Legislature did not see fit to do other than allude to the "statute of limitations applicable under the general law," it seems likely that the same policies which govern the statute of limitations applicable to adults pertain to minors. ■ "The lapse of the statute of limitations operates as a statutory grant of 'amnesty' to an offender. Viewed in this light, it may be desirable to withhold amnesty from some crimes that are regarded as particularly serious. . . . The seriousness of the crime can be a rational consideration in setting the duration of a limitations period regardless of whether the purpose of criminal law is deterrence, incapacitation, or rehabilitation. For example, the following arguments may be made: (a) the more serious the offense, the greater need for deterrence and the less desirable the possibility of escape from punishment after a short period of limitation, or (b) the more serious the offense, the greater the likelihood that the perpetrator is a continuing danger to society, and thus the greater the need to incapacitate the perpetrator when he is caught, or (c) the more serious the offense, the less likely the perpetrator will reform of his own accord, and thus the greater the need for compulsory treatment when he is apprehended. It is also true that when the charge is more serious, more is at stake for the defendant and the defendant's need for the procedural protection that a limitations period affords is correspondingly greater. If the purpose of criminal law is retribution, of course, the seriousness factor would be a paramount consideration." (*Making Sense Out of the California Criminal Statute of Limitations* (1983) 15 Pacific L.J. 35, 56, fn. omitted.)

■ It is true that the adult penal provisions have a different purpose from the juvenile court law. For adults, "the purpose of imprisonment for crime is punishment" (Pen. Code, § 1170, subd. (a)(1)), although there are certain rehabilitative provisions (see Welf. & Inst. Code, § 3051 et seq. [for commitment of a drug-addicted convicted defendant to a narcotics treatment facility]; Veh. Code, §§ 23161, 23166, 23171, 23176, 23181, 23186, 23191 [for alcohol treatment programs for drunk drivers]; and Pen. Code,

§ 1000 et seq. [for drug, domestic violence, child abuse and neglect, and mentally retarded diversion programs]).

For juveniles, the intent is beneficent. Section 202 provides: "(a) The purpose of this chapter is to provide for the protection and safety of the public and each minor under the jurisdiction of the juvenile court . . . . When the minor is removed from his or her own family, it is the purpose of this chapter to secure for the minor custody, care, and discipline as nearly as possible equivalent to that which should have been given by his or her parents. . . . [¶] (b) . . . Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance which is consistent with their best interest, which holds them accountable for their behavior, and which is appropriate for their circumstances. Such guidance may include punishment that is consistent with the rehabilitative objectives of this chapter. . . . [¶] [] 'Punishment' for the purposes of this chapter, does not include retribution."

■ The goals of protection of the public and treatment and guidance of a minor who committed a serious offense would not be furthered by a short statute of limitations. It might be appropriate to grant "amnesty" to the minor-perpetrator of conduct designated as a misdemeanor or infraction who has not been prosecuted within a year, since for such a person the process of growth and maturation might have eliminated the necessity for juvenile court intervention. However, for a person capable of the kind of attack committed in the instant case, which would have resulted in a felony conviction had he been an adult, the passage of just one year's time cannot justify the hope that the public will be protected and the minor rehabilitated because, although he has escaped being held accountable for his actions, he has "grown out of" his assaultive tendencies.

Furthermore, a one-year statute of limitations on all section 602 proceedings would not provide order and regularity in the administration of juvenile justice. Such a statute would require law enforcement officials to make independent investigations into the ages of all offenders, not knowing, as for example in the instant case, whether they had one year or three in which to complete their investigation. Prosecutors would not know if the one- or three-year limitation would apply, since if the minor were found unfit for proceedings in the juvenile court, and if he were certified to be tried as an adult under section 707, imprisonment in state prison would be available as a penalty, and the three-year period would apply.

Penal Code section 801 requires prosecution of an offense punishable by imprisonment in the state prison (except for offenses which are punishable

by death, life imprisonment, or imprisonment for eight years or more) to be commenced within three years after commission of the offense. ██ ██ ██ ██ ██ Both Penal Code sections 220 and 243.4 are offenses which are punishable by imprisonment in the state prison.[4] We conclude, in the instant case, the applicable statute of limitations was three years from December 22, 1986. (See also, 53 Ops.Cal.Atty.Gen. 208 (1970).) The prosecution of appellant was not time barred.

### Sufficiency of the Identification

██ Next, appellant claims that Karen's eyewitness identification was insufficient to support the finding that the petition was true when other evidence adduced at the jurisdictional hearing is taken into account. Specifically, appellant argues that he established that he did not look like the composite picture prepared the day after the attack; that he had short hair and the perpetrator apparently had hair around his ears; that he was three to five years younger than the perpetrator and twenty-nine pounds heavier; that when Karen identified his photograph one year and seven months after the attack, she was not 100 percent sure that appellant was her assailant; that Karen was living with a deputy sheriff at and after the time of the attack; and that she made a live lineup identification just one week before the jurisdictional hearing and after she had seen approximately a dozen newspaper articles containing the minor's photograph. Furthermore, appellant complains that Karen's in-court identification "merely consisted of twice giving the answer, 'Yes, I am', to the district attorney's rote and ritualistic questions, 'Are you sure Mr. [M.] was the person who attacked you at the exercise center?' and 'Okay. You're positive?'" Lastly, appellant's sister's testimony was uncontradicted that the district attorney told Karen to "say [she was] sure" when she told him she was just "pretty sure but not really sure."

██ A reviewing court must presume in support of the juvenile court's judgment the existence of every fact that the trier of fact could reasonably infer from the evidence. (*In re Jose R.* (1982) 137 Cal.App.3d 269, 275 [186 Cal.Rptr. 898].) The test for reviewing the sufficiency of the evidence is whether there is substantial evidence to support the conclusions of the trier of fact. The evidence is to be viewed in the light most favorable to respondent, and the existence of every fact that the trier of fact could reasonably deduce from the evidence in support of the judgment is to be presumed.

---

[4] Although Penal Code section 243.4 is a "wobbler" which may be punished either as a misdemeanor or as a felony, for statute of limitations purposes, the felony statute applies because the offense is punishable by state prison. (*People* v. *Superior Court (Ongley)* (1987) 195 Cal.App.3d 165 [240 Cal.Rptr. 487].)

(*People* v. *Wright* (1985) 39 Cal.3d 576, 592 [217 Cal.Rptr. 212, 703 P.2d 1106]; *In re David K.* (1978) 79 Cal.App.3d 992, 999 [145 Cal.Rptr. 349].)

 We note that "[a]ppellants often mistakenly assume that, if the evidence against the judgment greatly preponderates, a reversal is proper because of the absence of a *substantial conflict*. [¶] The test, however, is not whether there is substantial conflict, but rather whether there is *substantial evidence in favor of the respondent*. If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment will be affirmed. . . . 'Of course, all of the evidence must be examined, but it is not weighed. All of the evidence most favorable to the respondent must be accepted as true, and that unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed.' [Citations.]" (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 282, pp. 293-294.)

 In the instant case, "there is in the record the inescapable fact of in-court eyewitness identification. That alone is sufficient to sustain the conviction." (*People* v. *Hughes* (1969) 271 Cal.App.2d 288, 291 [76 Cal.Rptr. 369].) Next, when the circumstances surrounding the identification and its weight are explored at length at trial, where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court. (*People* v. *Lundy* (1969) 2 Cal.App.3d 939, 944 [82 Cal.Rptr. 815].) Third, the evidence of a single witness is sufficient for proof of any fact. (Evid. Code, § 411; *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 885 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845].)

 Karen gave a detailed description of her attacker after the incident. She identified photographs, including one of a thinner appellant, and although she declared herself not 100 percent positive from the photographs, she was positive of her identification when she saw appellant in the flesh. Although appellant points to inconsistencies between his physical appearance and Karen's description, and offered testimony that the district attorney coached Karen to say she was sure, such evidence did not have "sufficient verity to be accepted by the trier of fact." Moreover, we have examined the exhibits, and find that appellant's resemblance to the composite drawing is persuasive.

Finally, although appellant's mention of the fact that Karen had a personal relationship with a law enforcement officer is apparently to invite us to infer that her testimony is " 'inherently improbable and impossible of belief' " (*People* v. *Maxwell* (1979) 94 Cal.App.3d 562, 577 [156 Cal.Rptr. 630]), we find substantial evidence to support the eyewitness identification.

*Sexual Battery*

 Next, appellant contends that the evidence is insufficient to support the finding that the petition was true on the charge of sexual battery (Pen. Code, § 243.4) since there was no evidence that he directly touched Karen's skin on an intimate part of her body.

Penal Code section 243.4 provides, in pertinent part: "(a) Any person who touches an intimate part of another person while that person is unlawfully restrained by the accused or an accomplice, and if the touching is against the will of the person touched and is for the purpose of sexual arousal, gratification, or abuse, is guilty of sexual battery. . . . [¶] [] (d) As used in this section, 'intimate part' means the sexual organ, anus, groin, or buttocks of any person, and the breast of a female. . . . As used in this section, 'touches' means physical contact with the skin of another person whether accomplished directly or through the clothing of the person committing the offense."

 "[T]he statutory definition of 'touches' in [Penal Code] section 243.4 leads to a reasonable, plain reading that actual direct contact with the skin of the intimate part of another person is essential to the commission of a sexual battery. It is difficult to conceive of plainer language. Where the 'statutory language is "clear and unambiguous there is no need for construction and the courts should not indulge in it." ' [Citation.]" (*In re Keith T.* (1984) 156 Cal.App.3d 983, 986 [203 Cal.Rptr. 112].)[5]

 Looking at the evidence in this case, Karen testified that appellant touched the outside of her clothing at the vaginal area. This was not a touching of the skin and this conduct does not constitute the crime of sexual battery.

Karen also testified that "he tried to remove [the leotard] from the shoulder, pulled it down from the shoulder (indicating). [¶] [] The strap of the bra came down with the side of the leotard, but that's about as far as it went. [¶] [THE DISTRICT ATTORNEY:] Okay. Did he touch any part of your breasts or chest area? [¶] [THE WITNESS:] Yes. He touched my breast. He touched my chest area a lot as he was holding me down. [¶] [] [THE DISTRICT ATTORNEY:] Is that at the same time he pulled the leotard down on that side? [¶] [THE WITNESS:] Right. It was brief. [¶] [THE DISTRICT ATTORNEY:] . . . Could you please describe it. [¶] [THE WITNESS:] Best description would be a very awkward caress."

---

[5] The 1985 amendment to the statute, adding the language "whether accomplished directly or through the clothing of the person committing the offense," does not undermine the authority of this holding. (See Stats. 1985, ch. 1257, § 1.1.)

On the issue of whether the skin on Karen's breast was touched, this evidence is unclear. Karen's statement that he touched her breast could equally mean contact with her skin or contact through her clothing. Unfortunately, unlike the testimony about the touching of her vaginal area, the witness was not asked directly whether it was the *skin* on her breast that was touched.

As stated above, on appeal the reviewing court must draw all reasonable inferences from the evidence that support the finding of the juvenile court. (*In re Charles G.* (1979) 95 Cal.App.3d 62, 67 [156 Cal.Rptr. 832].) At the hearing, the judge had the benefit of seeing the witness, which included the observation of her "indicating." Karen's testimony that appellant touched her breast is substantial evidence of the offense. It is reasonable to infer from that testimony that when appellant pulled the leotard and bra strap down, his hand, making "a very awkward caress" touched the skin on her breast. Unlike the state of the evidence in *In re Keith T., supra,* 156 Cal.App.3d at page 988, we do know how Karen was dressed, and we do know that appellant pulled down her leotard and bra strap. Furthermore, unlike *In re Keith T.,* the issue of the touching of skin was not argued at the jurisdictional hearing. Counsel focussed completely on the issue of identity, and the court's finding that Count II, the sexual battery, was true sparked no outcry from defense counsel.

There is sufficient evidence to sustain the finding of sexual battery.

### Precommitment Credits

Appellant's final contention is that the court erred when it did not give him any credit for the 98 days he spent in custody at the local juvenile facility before he was committed to the CYA. Respondent argues that for some, if not all, of that time appellant was in custody on other offenses, therefore, that precommitment time was not attributable solely to the instant offense, and that since the record is not clear, any uncertainty in the record should be resolved against appellant.

The record shows that appellant was continuously in custody from the time of his arrest on August 3, 1988, to his dispositional hearing on November 15, 1988. However, what charges he was in custody on are not clear. A minute order dated August 29, 1988, with two case numbers, lists three sets of charges amounting to twelve counts, including those of the instant case. Another minute order, dated August 30, 1988, contains only the case number and the two counts of this case. The social study report of the probation officer makes no mention of the other two sets of charges, lists two offenses in 1979 and 1985 which resulted in counselling and a fine, respectively, and

gives ninety-eight days credit for time served (Aug. 3, 1988 to Nov. 8, 1988).

At the dispositional hearing, the court said: "For the violation of 220 of the Penal Code, the defendant [*sic*] will be confined to the California Youth Authority for the six-year term. That is the upper term required by law, and under Section [654] . . . [¶] [ ] [n]o sentence will be imposed on the 243.4." The minute order shows a three-year concurrent sentence on Count II.

 A juvenile is entitled to credit for the time he was detained in juvenile hall pending resolution of charges against him. (*In re Eric J.* (1979) 25 Cal.3d 522, 536 [159 Cal.Rptr. 317, 601 P.2d 549].) However, he is not entitled to precommitment credits for time spent in juvenile hall on an unrelated commitment. (*In re Fausto S.* (1985) 175 Cal.App.3d 909, 912 [221 Cal.Rptr. 104].)

It is impossible to tell from the record whether appellant's precommitment custody was solely on this case. In a declaration supporting a motion to continue the jurisdictional hearing, appellant's counsel stated that appellant was detained on the instant charges on August 8, and that the jurisdictional hearing was originally set for August 29. However, "[p]rior to August 29, 1988, two other non-related cases were filed in the Superior Court . . ." alleging burglary and the rape-murder of a young teenager. From this statement, and from the social study report, it appears that at least some of appellant's precommitment custody was attributable only to the instant case, and he should be given credit for it.

Although the record is not such as would enable this court to correct the error (*In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13]), "another aspect of the case makes remand with directions to the superior court, rather than appellate correction, . . . appropriate." (*Ibid.*)

"There are several deficiencies in the superior court's dispositional order, not raised by either party, which have become apparent to this court during its review of this case." (*In re Ricky H., supra,* 30 Cal.3d at pp. 190-191.) As in *Ricky H.,* appellant was charged with a count that "is, in the case of an adult, punishable alternatively as a felony or a misdemeanor with imprisonment in the county jail or state prison a possible punishment. (Pen. Code, § 17, subd. (b).) Section 702 requires that when a minor is found to have committed such an offense, 'the court shall declare the offense to be a misdemeanor or felony.' The record in this case does not demonstrate that the court made an express finding that the assault offense was either a misdemeanor or a felony.

"The record does indicate that the offense was described as a felony in the section 602 petition . . . . However, the preparation of a petition is in the hands of the prosecutor, not the court. The mere specification in the petition of an alternative felony/misdemeanor offense as a felony has been held insufficient to show that the court made the decision and finding required by section 702. [Citation.] Similarly, the setting of a felony-level maximum period of confinement has been held inadequate to comply with the mandate of section 702. [Citation.] While the minutes of the dispositional hearing recited that the minor was committed to the Youth Authority 'for conviction of a felony, to wit: Vio. 245a PC,' the transcript of the dispositional hearing, as in [*In re*] *Dennis C.* [(1980) 104 Cal.App.3d 16 (163 Cal.Rptr. 496)], 'does not support this notation.' [Citation.] [¶] Therefore, on remand the trial court should determine the character of the offense as required by section 702." (30 Cal.3d at pp. 191-192.)

The instant case is amazingly like *Ricky H.* The court did not make the express finding required by section 702. Moreover, although the transcript of the hearing shows that the court felt constrained by Penal Code section 654 to order that "[n]o sentence will be imposed on the 243.4," the minute order shows imposition of "3 years concurrently." Furthermore, while the transcript of the jurisdictional hearing shows that the court found Count II true, the minute orders for both the jurisdictional and the dispositional hearings recite that Count II was "found not to be true."

Given the necessity for the court to make the required finding whether the violation of Penal Code section 243.4 was a felony or a misdemeanor, and given the necessity for the court to determine whether appellant is entitled to custody credits attributable to precommitment detention on these charges, remand is required.

### DISPOSITION

The order committing the appellant to the CYA is affirmed. The case is remanded to the superior court for: (1) the award of credit for actual days in juvenile hall confinement attributable to the instant offenses; (2) a declaration by the court as to whether the sexual battery is a misdemeanor or felony; and (3) the specification of the maximum term of confinement.

Agliano, P. J., and Elia, J., concurred.

A petition for a rehearing was denied December 1, 1989, and appellant's petition for review by the Supreme Court was denied February 15, 1990.