Filed 8/15/16  P. v. McNeil CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARL McNEIL,<br><br>    Defendant and Appellant. | B265374<br><br>(Los Angeles County<br>Super. Ct. No. BA420169) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael D. Carter, Judge.  Affirmed.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Shawn McGahey Webb and Ilana Herscovitz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

Carl McNeil appeals from a sentence of 100 years to life, following his convictions for three counts of attempted murder. He contends that eyewitness identification of him as the shooter was not credible. For the reasons set forth below, we conclude there is sufficient evidence to support the convictions. Accordingly, we affirm.

## PROCEDURAL HISTORY

A jury found appellant guilty of the attempted murder of Chenika Carter, Kindu Carter, and Yvonne Pamela Hargrave (Pen. Code, §§ 664, 187, subd. (a)).[1] The jury also found true the allegations that appellant personally used and intentionally discharged a handgun, causing great bodily injury to the three victims (§ 12022.53, subds. (b), (c), (d)). In a bifurcated bench trial, the trial court found true the allegations that appellant had suffered two strikes within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(j), 1170.12), and that he had served five prior prison terms (§ 667.5, subd. (b)).

The trial court heard and denied appellant's motion for a new trial based on purported lack of evidence that he was the shooter. It sentenced appellant to 100 years to life in state prison. On June 25, 2015, appellant timely noticed an appeal from the convictions and sentence.

## FACTUAL BACKGROUND

In December 2013, June Martin and her daughter, Ayana Herron, lived in unit D in an apartment building located at 4141 Muirfield in Los Angeles. Chenika Carter, Kindu Carter, Yvonne Pamela Hargrave, and Heavenly Jenkins lived in unit C, across the hall. On the evening of December 11, 2013, Chenika, Hargrave and Heavenly had an argument. Shortly thereafter, Heavenly's mother -- later

---

[1]    All further statutory references are to the Penal Code.

2

identified as Madelyn Young -- arrived and stood in front of unit C. Young stated, "'Please let my daughter out of there. Are you hurting my daughter? I want my daughter.'" Young was accompanied by another female, a light-skinned male wearing a gray hooded sweatshirt, and a heavier and darker-skinned African-American male. Martin saw the heavier darker male when he was running up the stairs to reach the apartment. At trial, she identified him as appellant.[2]

Young began knocking on the door of unit C. Martin opened her door (unit D) and told Young, "'I'm on the phone with the police. I will call them for you. Please do this another way.'" Shortly thereafter, appellant asked Young, "'Is she still in trouble in there?'" Young responded, "'Yes,'" and told appellant, "I can't get the door open." Appellant kicked open the door of unit C. Although Martin could see appellant only from the back, she observed him move his hand. Martin saw flashes near appellant's hand and heard gunshots.[3]

Chenika testified that on the evening of December 11, Heavenly came to her apartment to speak with her brother, Kindu. Chenika looked outside her window and noticed a white truck pull up to the complex and five or six Black people exiting and coming to the front gate. Chenika asked Heavenly if those people were her acquaintances, but Heavenly denied it. Chenika called her mother who had just left and told her, "'Mom, come back. I think she brought her family over here.'" Hargrave and Heavenly then had an altercation, and Chenika told Heavenly to leave. Shortly after Heavenly left via the back entrance, Chenika heard someone pounding on her front door and yelling. There was a "boom" and the front door

---

[2]    Martin previously had identified appellant in a photographic six-pack.

[3]    Herron's trial testimony was substantially similar to her mother's. However, Herron did not see the shooter's face, and could not identify appellant as the shooter at trial.

3

swung open.  Young and appellant entered the apartment; a light-skinned man stood directly behind them.  Young screamed, "'Where is that bitch at?'"  Chenika responded, "'Your daughter is gone.  She is all right.  She is gone.  Like there is no need for this.'"  Young tried to push her way past Chenika, and Chenika heard gunshots directly in front of herself.  She felt a shot hit her right arm, and turned around to see Kindu and Hargrave being hit by bullets.  Kindu and Hargrave began running, and Chenika started screaming.

On cross-examination, Chenika acknowledged that at the preliminary hearing, she testified that the light-skinned man was the shooter.  On redirect, Chenika stated that at the preliminary hearing, she initially said appellant was the shooter but later stated that it was the light-skinned man.  Chenika explained she was confused.

Hargrave testified she was standing behind Kindu when the door was kicked open.  She saw appellant and Young standing at the door, and a lighter slender man standing behind them.  After Kindu was hit in the chest by a bullet, he ran to the back to exit the apartment.  Hargrave followed Kindu, and a bullet hit her spine.  She fell down and could not move.

Kindu testified he was in front of the apartment door when it was "banged" open.  When the door opened, Kindu saw appellant and Young.  Young began arguing with Chenika, and Kindu ran up and grabbed Young.  Kindu was standing next to appellant, who shot Kindu in the chest.  Kindu tried to knock the gun out of appellant's hand and then started running.  He fled from the apartment, and sat down in the alley until paramedics arrived to treat him.  Kindu acknowledged that at the preliminary hearing, he testified that he could not determine where the shots came from and did not see who shot him.

4

Lynette Flores testified that in December 2013, she lived in an apartment at 4145 Muirfield. From her apartment, she was able to see the front gate to the 4141 Muirfield apartment building. On the evening of December 11, 2013, she observed appellant going through the front gate. Shortly thereafter, she heard several gunshots. Appellant then ran outside, holding a handgun.[4]

## DISCUSSION

Appellant contends there was insufficient evidence to support the jury's verdict. Specifically, he contends the eyewitness identification of him as the shooter was not credible. "When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- that is, evidence that is reasonable, credible, and of solid value -- from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. [Citation.]" (*People v. Young* (2005) 34 Cal.4th 1149, 1181; *People v. Allen* (1985) 165 Cal.App.3d 616, 623 (*Allen*) [same].)

With respect to the sufficiency of eyewitness identification, "to entitle a reviewing court to set aside a jury's finding of guilt the evidence of identity must be so weak as to constitute practically no evidence at all." (*People v. Lindsay* (1964) 227 Cal.App.2d 482, 493 (*Lindsay*); *People v. Mohamed* (2011) 201 Cal.App.4th 515, 521 [same].) As the *Lindsay* court explained: "The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, the uncertainty of recollection, and the qualification

---

[4] Aside from her in-court identification, Flores also identified appellant in a photographic six-pack.

5

of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance and then the trial court upon the motion for new trial. [Citations.] The general rule, then, is that it is not essential that a witness be free from doubt as to one's identity. He may testify that in his belief, opinion or judgment the accused is the person who perpetrated the crime, and the want of positiveness goes only to the weight of the testimony. [Citations.] Our courts have held that it is not necessary that any of the witnesses called to identify the accused should have seen his face. [Citation.] Identification based on other peculiarities may be reasonably sure. Consequently, the identity of a defendant may be established by proof of any peculiarities of size, appearance, similarity of voice, features or clothing. [Citations.]" (*Lindsay*, *supra*, at pp. 493-494, fn. omitted.)

At trial, Kindu identified appellant as the shooter. Martin identified appellant as the man standing at the door to unit C, moving his hands in a manner consistent with firing multiple shots. Moreover, all witnesses placed appellant at the front door when the shooting occurred, and Chenika testified that shots came from the front door. Flores saw appellant run from the scene with a handgun in hand. Based on this evidence, a reasonable jury could conclude that appellant fired the shots.

Appellant notes that Chenika testified at the preliminary hearing that the light-skinned male was the shooter and argues other witnesses' versions of events were inconsistent or contradictory. None of their testimony, however, was inherently improbable or physically impossible. Moreover, "[w]eaknesses and inconsistencies in eyewitness testimony are matters solely for the jury to evaluate," and we may not reweigh the jury's assessment of witness credibility. (*Allen*,

6

*supra*, 165 Cal.App.3d at p. 623.)  On the record below, the eyewitness testimony was sufficient to establish appellant as the shooter.  (See *In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497 ["[W]hen the circumstances surrounding the identification and its weight are explored at length at trial, where eyewitness identification is believed by the trier of fact, that determination is binding on the reviewing court"].)

## DISPOSITION

The judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**



MANELLA, J.


We concur:



EPSTEIN, P. J.



COLLINS, J.