Filed 10/14/24 P. v. Fox CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER ALEXANDER HUNT FOX,<br><br>    Defendant and Appellant. | 2d Crim. No. B329737<br>(Super. Ct. No. 19CR11756)<br>(Santa Barbara County) |

Christopher Alexander Hunt Fox appeals from the judgment entered after a jury found him guilty of assault with a deadly weapon (ADW).[1]  (Pen. Code, § 245, subd. (a)(1).)[2]  The jury found true an allegation that he had personally inflicted great bodily injury (GBI) upon the victim.  (§ 12022.7, subd. (a).)

---

[1] Appellant testified that he has two last names – "Hunt" and "Fox."

[2] Unless otherwise specified, all statutory references are to the Penal Code.

The trial court sentenced him to prison for five years: two years for the ADW plus three years for the GBI enhancement.

Appellant contends: (1) the evidence is insufficient to support the jury's finding that he had not acted in lawful self-defense; (2) the trial court erroneously excluded evidence of a threat made by the victim three days after the ADW; and (3) the trial court abused its discretion in denying his request for probation. We affirm.

*Facts*

The victim, John Shalhoob, testified as follows: He had a dating relationship with Ashley Sharkey. Appellant was Sharkey's former boyfriend and the father of her daughter.

During the evening on December 8, 2019, Shalhoob accompanied Sharkey to her apartment. When they arrived, appellant was standing at the doorway to the apartment. He had come to visit his daughter. Sharkey asked Shalhoob "to talk to [appellant] about leaving because . . . [appellant] was intoxicated."

Appellant and Shalhoob walked to an outdoor patio in the apartment building. Appellant "jumped up on a wall" and climbed to the roof above the patio. Shalhoob said to appellant, "'What are you doing up there' . . . 'Get down from there. It's not safe for you up there.'" Shalhoob "was concerned that [appellant] would fall off the roof."

Shalhoob climbed onto the roof. He said to appellant: "'Hey, I'm up here now. Why don't we just all get off the roof. Come on, let's both of us get off the roof.'" Appellant hit Shalhoob in the face. Shalhoob "grabbed him by the shirt, and . . . threw him on the . . . roof pretty good . . . ."

2

Appellant agreed to get off the roof. Shalhoob "turned around to walk off the roof, and [appellant] punched [him] in the back." The punch "knocked the air out of [him]." Shalhoob said, "'Come on, let's get off this frickin' roof.'" He "turned around again [to walk off the roof], [and appellant] punched [him] again in the back."

Shalhoob realized that he had been stabbed. Appellant stabbed him "a couple more times" with a knife. Shalhoob "knew [he] had to fight for [his] life." He grabbed the knife with his right hand. He "was holding on [to the knife] for dear life" to stop appellant from stabbing him. The knife cut off the tip of his middle finger.

Sharkey climbed onto the roof. With her help, Shalhoob subdued appellant.

Shalhoob was transported to a hospital emergency room. The doctor who treated him testified, "[T]he patient presented acutely [with] multiple stab wounds involving his chest and abdomen." The doctor opined that his injuries were "life threatening."

Appellant testified that he had stabbed Shalhoob in self-defense. Shalhoob started the fight by punching him in the face. Shalhoob put appellant in a "headlock" until he "blacked out." When appellant awoke, he was lying on his back. He tried to get up, but Shalhoob put him in a "choke hold." Appellant could not breathe. He "passed out for a second time."

When appellant awoke, "[Shalhoob] was laughing. And he was saying that this was his city and that he was going to fuck me up real bad and that I was in for it." Shalhoob again put appellant in a choke hold and forced him to the edge of the roof. Shalhoob said: "'If you fall, nobody's going to believe you. And

3

you'll probably just wind up in a wheelchair' . . . ." Appellant "felt he was going to throw me off [the roof] and I was going to die." Appellant took out a pocketknife and started stabbing Shalhoob. "I just threw my knife around, . . . I wasn't trying to kill him. I just wanted to get him off of me."

*Sufficiency of the Evidence*

Appellant claims the evidence is insufficient to support the jury's finding that he had not acted in lawful self-defense. "Lawful self-defense requires (1) that defendant reasonably believed he was in imminent danger; (2) that the immediate use of defensive force was necessary to defend against that danger; *and* (3) that defendant used no more force than necessary to defend against the danger." (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1025.) "[T]he ordinary self-defense doctrine . . . may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault . . .), has created circumstances under which his adversary's attack or pursuit is legally justified." (*In re Christian S.* (1994) 7 Cal.4th 768, 773, fn. 1.) "Only when the victim resorts to *unlawful* force does the defendant-aggressor regain the right of self-defense." (*People v. Frandsen* (2011) 196 Cal.App.4th 266, 273.) The jury was instructed, "The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense."

Appellant asserts that he "acted in lawful self-defense and used only the force necessary to repel the attack from Shalhoob." He "reasonably believed that he was in imminent danger of being killed or suffering great bodily injury. [Record citation.] Therefore, appellant's use of deadly force to repel Shalhoob's attack was justified."

4

"'Given this court's limited role on appeal, [appellant] bears an enormous burden in claiming there was insufficient evidence to sustain his conviction.' [Citation.] '"The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder."'" (*People v. Morales* (2021) 69 Cal.App.5th 978, 988.)

Here, the jury must have believed Shalhoob's version of events and disbelieved appellant's version. "'"We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict.'" (*People v. Penunuri* (2018) 5 Cal.5th 126, 142.) Shalhoob's testimony constitutes sufficient substantial evidence to support the jury's finding that appellant did not act in lawful self-defense. (*In re Gustavo M.* (1989) 214 Cal.App.3d 1485, 1497 ["the evidence of a single witness is sufficient for proof of any fact"].)

5

*Trial Court's Exclusion of Alleged Threat*
*Made by Shalhoob to Sharkey after the Stabbing*

Appellant's mother, Gloria Sickmen, reported to the police that Sharkey had telephoned her three days after the stabbing. Sharkey said Shalhoob had threatened to kill appellant, Sharkey, and Sharkey's daughter. Law enforcement officials did not investigate Sickmen's report of Shalhoob's threat.

Prior to opening statement, appellant's counsel asked the trial court to permit her to question the investigating officers about Shalhoob's threat. Counsel said that evidence of the threat would be offered "not for the truth of the matter, but simply to ask the investigating officers, 'You received information about a threat towards the witnesses in this case from Mr. Shalhoob, and you did nothing to follow-up.' That goes to their credibility."

The trial court excluded the evidence under Evidence Code section 352 because "it's just going to confuse the jury, it's going to take lots of additional time, and it has very minimal relevance in terms of whether the officers properly conducted their investigation." Furthermore, the court said the evidence is "double, triple hearsay Shalhoob to Sharkey to Sickmen to [the police], . . . that's just not admissible in that form."

Sharkey did not testify. During a break in the testimony of District Attorney Investigator Eric Davis, appellant's counsel asked the trial court "to reconsider its ruling on allowing me to inquire on the investigation about [Shalhoob's] threat that was reported to the police department . . . , and [for which there] was no follow-up." The court replied: "It comes to us in like triple hearsay, the claim that there was some sort of threat made, and it's not even a threat involving witness dissuasion. It's just – it's sort of a vague threat." "I think [it's] . . . substantially more

prejudicial than probative under [Evidence Code section] 352. [¶] Because you're not really seeking to introduce the threat. If you were seeking to do that, we could take testimony from witnesses and determine whether or not it would be independently admissible. What you're trying to do is to get that threat before the jury using the vehicle of 'these officers didn't sufficiently investigate the crime.' [¶] So my ruling stands."

Appellant subsequently filed a document entitled, "DEFENDANT'S REQUEST TO PRESENT EVIDENCE OF THREATS AGAINST WITNESSES." Appellant requested that the court again reconsider its ruling on the admissibility of Shalhoob's threat to Sharkey. Appellant attached to the request a police report stating that Shalhoob's threat involved an attempt to dissuade Sharkey from testifying: "Sharkey[] called Sickmen and told her John Shalhoob had threatened to kill her, [appellant] (while he is in jail), and their baby if Sharkey testified to what occurred on 12/9/19 between [appellant] and Shalhoob. Sharkey was scared."

In the request appellant's counsel argued: "The defense seeks to introduce this evidence not for the truth of the matter but to inquire of the thoroughness of the investigation. The defense would introduce this evidence through Santa Barbara Police Officer John Duffy, who documented this report . . . and Investigator Eric Davis of the Santa Barbara District Attorney's Office who will confirm that the agency did not follow up." In his appellate reply brief appellant asserts that "this form of cross-examination of [Duffy and Davis] was the only avenue available to elicit [the threat] evidence" since Sharkey "did not testify at trial."

7

The trial court did not rule on the request for reconsideration of its prior evidentiary ruling. Appellant did not object to the lack of a ruling. The record does not disclose whether the trial court read Officer Duffy's report.

Appellant contends, "[T]he trial court improperly precluded appellant's questioning of [District Attorney Investigator] Davis regarding the lack of follow up investigation regarding [Shalhoob's threat to Sharkey]." Appellant explains, "The highly relevant evidence relating to the lack of follow up investigation . . . showed the police too quickly jumped to the conclusion that appellant was the aggressor without completing a thorough investigation into the incident."

Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "On appeal, we apply the abuse of discretion standard in reviewing a trial court's ruling on the admissibility of evidence, including an Evidence Code section 352 objection to evidence. [Citation.] We will reverse a trial court's ruling only if the record shows the court acted in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Chavez* (2018) 22 Cal.App.5th 663, 702.)

The trial court did not abuse its discretion. Evidence of the threat and lack of "follow-up" by the police was offered to prove that the police had not thoroughly investigated the case. But appellant did not explain to the trial court how a police inquiry into the threat or a more thorough investigation of the case would

8

have resulted in the discovery of evidence beneficial to appellant, i.e., evidence supporting his claim that he had acted in lawful self-defense.  Thus, the lack of "follow-up" by the police had little, if any, probative value.

If evidence of the threat and lack of "follow-up" by the police had been admitted to show that the police had not thoroughly investigated the case, the prosecutor probably would have called the officers involved in the case to testify why they had not followed up on the threat.  The court reasonably concluded that the injection of this issue into the trial would have resulted in an undue consumption of time and would have confused the jury.  The court said: "[T]his information [about the threat] was received days after the incident, and so now [if the information is admitted] we're going [to] get into a question of whether or not a call was made, what was the nature of the call, who made it, and really the focus has got to be on . . . the date [of the offense] in question, and what happened.  Was it self-defense, was it not self-defense, not so much whether they followed up on [Sickmen's] claim [of a threat made by Shalhoob to Sharkey]."

We reject appellant's claim that the exclusion of the evidence "deprived [him] of his constitutional right to present a defense."  "As a general matter, the ordinary rules of evidence do not impermissibly infringe on the accused's right to present a defense." (*People v. Hall* (1986) 41 Cal.3d 826, 834.)

In any event, the exclusion of the evidence did not result in a miscarriage of justice.  "[A] 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing

party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

It is not reasonably probable that the result would have been different had evidence of the threat and lack of "follow-up" by the police been admitted for the purpose of showing that the police had not thoroughly investigated the stabbing. The jury's verdict was based on its evaluation of the live testimony of appellant and Shalhoob. Appellant has not shown how the lack of "follow-up" by the police into a threat made three days after the stabbing would have assisted him in proving that he had stabbed appellant in self-defense.

*Trial Court's Denial of Probation*

Appellant contends the trial court abused its discretion in denying his request for probation. The probation officer observed that appellant is "presumptively ineligible for a grant of probation pursuant to [section] 1203(e)(2)." This section provides that, "[e]xcept in unusual cases in which the interest of justice would best be served if the person is granted probation," probation shall not be granted to a person "who used . . . a deadly weapon upon a human being." (*Ibid*.)

In support of a grant of probation, the probation officer noted that appellant's "prior performance on probation was satisfactory" and that "[i]mprisonment will likely have a negative effect on [him]." Moreover, appellant "appears to have addressed his primary risk factor, impaired judgment due to alcohol intoxication, by reportedly abstaining from alcohol consumption, residing at sober living homes, and participating in therapy."

In support of the denial of probation, the probation officer stated: "Shalhoob suffered lacerations to his face and hand and puncture wounds to his neck, chest and back." His injuries

included "lacerated lungs, as well as a gruesome facial laceration. He endured hours of emergency surgery and a 19-day hospitalization. He also had to endure subsequent facial plastic surgery and eye surgery in an attempt to correct the damage [appellant] inflicted on him. As a result of his hospitalization and related surgeries, the victim suffered great monetary losses." At the sentencing hearing the prosecutor said Shalhoob had been stabbed in the area of his eye. The wound "was almost two inches deep."

According to the probation report, an aggravating factor was that appellant's "violent conduct . . . indicates a serious danger to society." A mitigating factor was that he "has an insignificant record of criminal conduct."

The probation officer concluded that appellant "is a marginal candidate for a grant of probation." But the officer said, "The Probation Department believes [appellant] should be afforded an opportunity on probation prior to the execution of a state prison commitment."

"A sentencing court enjoys broad discretion in determining whether to grant or deny probation. A defendant who is denied probation bears a heavy burden to show the trial court has abused its discretion. [Citations.] Furthermore, 'a denial of probation after consideration of the application on its merits is almost invariably upheld. [Citations.]' [Citation.]" (*People v. Mehserle* (2012) 206 Cal.App.4th 1125, 1157.) "To establish abuse, the defendant must show that, under the circumstances, the denial of probation was arbitrary or capricious." (*People v. Lai* (2006) 138 Cal.App.4th 1227, 1257.)

Appellant contends, "The trial court's failure to properly consider the individualized circumstances in mitigation

11

amounted to an abuse of discretion."  But the trial court carefully considered the mitigating circumstances.  The court said: "[Appellant] has minimal criminal history.  This [the present crime] seems to be out of character, there's no question about that."  "[T]here's some mitigation in the sense that . . . he was under the influence of alcohol at the time it occurred.  I don't see that he's a serious public safety risk moving forward."  Appellant "has some things going for him . . . based on the traditional criteria, no criminal history, he's older in the sense that he's in his 30s, and again hasn't demonstrated a violent character.  He's got character letters that are helpful . . . ."

Nevertheless, because of the serious nature of the crime and the great bodily injury inflicted upon Shalhoob, the trial court believed that probation was unwarranted.  The court explained: "I just don't see it as a probation case.  I think that would be the wrong message to send both to [appellant] and to the community that this kind of serious offense is going to happen, jury's going to hear the evidence, they're going to find the defendant guilty of assault with a deadly weapon with a knife, multiple stab wounds, and then we're going to just say, we're going to put him on probation."  "[T]his is almost as serious a kind of case as you can get, because . . . had there not been immediate treatment for [Shalhoob], . . . it could have been a murder."

The probation officer opined that, "when [the circumstances relating to appellant] are all considered together, they appear to make a good basis for a probation grant."  But the officer acknowledged that "the circumstances of the instant offense and the impact they have had on the victim rise to the level of justifying a state prison commitment."

12

The probation officer continued, "This is a very difficult case to evaluate. Given the extent of the victim's injuries and the financial impact they have had on him, the defendant appears to be deserving of a state prison commitment. For that reason, a state prison recommendation was strongly considered. On the other hand, the instant offense appears to have been an isolated incident and a state prison commitment may be counterproductive."

Thus, the trial court had a reasonable basis for denying probation. It did not act irrationally, arbitrarily, or capriciously. It was not required to follow the probation department's recommendation that appellant "be afforded an opportunity on probation prior to the execution of a state prison commitment." Appellant has therefore failed to carry his heavy burden of showing that the trial court abused its discretion in denying probation.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:


GILBERT, P. J.


BALTODANO, J.


13

Brian E. Hill, Judge

Superior Court County of Santa Barbara

_____

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephanie C. Brenan, Supervising Deputy Attorney General, Gabriel Bradley, Deputy Attorney General, for Plaintiff and Respondent.